HAMITER, Justice.
Invoking our original jurisdiction the Louisiana State Bar Association, through its Committee on Professional Ethics and Grievances, instituted the instant proceeding in which it seeks the disbarment of Arthur B. Haack, a member of the Bar of Louisiana. The Association alleged that the respondent, during the year 1960, committed certain specified acts which constituted violations of laws of this state and rules of professional ethics; and that they were of sufficient gravity to evidence on his part a lack of moral fitness for the practice of law and to warrant his disbarment. Attached to the petition was a letter, of date April 13, 1961, written by the respondent to the Committee in which he fully described the entire transactions forming the basis of the alleged violations.
Answering, respondent admitted writing the mentioned letter; he averred that he realized his mistakes; and he prayed “that petitioner not disbar him but rather suspend him and give him another chance”.
Thereupon, this court appointed Honorable James A. Van Hook (a member of and an active practitioner at the Shreveport Bar for more than ten years) Commissioner to take evidence and to report his findings of fact and conclusions of law in the matter. And some three months later he held a hearing at which only the respondent testified, the testimony being principally an affirmation of the recitation of facts contained in the letter of April 13, 1961.
In due course Commissioner Van Hook furnished to this court an exhaustive and a well prepared report announcing certain findings of fact, based on the testimony and letter of Haack, which in his opinion supported most of the charges contained in the petition for disbarment. Also he set forth therein numerous other facts, reflected by the evidence and found by him, that would be relevant and important in a consideration of the question of mitigation of punishment. However, he made no recommendation as to what penalty should be imposed.
The respondent did not except to the report. In fact, during the oral argument here both he and his counsel freely admitted the commission of the violations charged; and they urged merely that, in view of the unusual mitigating circumstances disclosed, the court show leniency respecting the dis *33 ciplinary action to be taken. Further, near the close of such argument, counsel suggested that respondent would voluntarily surrender his privilege ,and license to practice law in this state if permitted to do so.
Subsequently, following submission of the case, respondent filed a written motion in which he tendered his resignation as a member of the Louisiana Bar and prayed that it be accepted and approved. The committee is opposing the motion and urges that it be denied.
The facts and circumstances giving rise to this proceeding, undisputed and clearly shown by the record, are as follows: Respondent was admitted to the Bar of Louisiana on February 17, 1959, at which time he was 25 years of age, and thereafter commenced the practice of law in Shreveport. About mid-August, 1960 he began representing a Mr. E. L. Hardin in negotiations leading to a proposed purchasing of certain property in Bossier City which was owned in indivisión by four majors and two minors. The total purchase price was to be $21,000, of which amount $5,000 was payable in cash and the balance on terms of credit. Certain technical obstacles were encountered in the obtaining of title from the minors, however, and it appeared that proper judicial authorization for the sale of their interest could not be secured until the latter part of September (this meant a delay of some six weeks in consummating the purchase).
Since both the prospective vendors and vendee were eager to arrange a binding agreement it was decided that the required $5,000 cash payment would be deposited by Hardin with respondent Haack until the sale’s completion. To this end the latter and his client’s wife went to the First National Bank of Shreveport where Mrs. Hardin paid for and received five $1,000 money orders, four of which were made payable to the respective major vendors and the remaining one to Haack (the proceeds thereof were to be paid ultimately to the minors). All five money orders were then delivered to respondent, and he immediately placed them in a safety deposit box rented by him.
Believing that the sale would not be completed for at least six weeks Haack, on the following day, endorsed the money order payable to him and deposited it to the credit of his personal bank account which was overdrawn approximately $300. Shortly thereafter he learned that the court had refused to approve a credit sale of the minors’ interest, the effect of which refusal would necessitate further negotiations between the parties.
Thereupon Haack, being deeply in debt and pressed by his creditors (he admitted that some of his debts represented loans he had obtained to pay off gambling obligations), requested certain close friends to (and they did) endorse for him the remaining four money orders which were payable to the major vendors; he then signed his own name thereto; and over a five months’ period he cashed them at banks in Shreveport and Baton Rouge. The proceeds, except for a very small amount, were used in paying his personal debts and the living expenses of his family (it consisted of his wife, two small children and himself).
If the undisputed facts and circumstances outlined above were only and solely those presented for our consideration in determining this matter an order of disbarment, as requested by the Committee, would be appropriate under and in keeping with the jurisprudence of this court. See Louisiana State Bar Association v. Ricard, 237 La. 530, 111 So.2d 761 (1959), Louisiana State Bar Association v. Pitcher, 238 La. 649, 116 So.2d 281 (1959), Louisiana State Bar Association v. Cohen, 242 La. 838, 138 So.2d 594 (1962), Louisiana State Bar Association v. Woods, 243 La. 94, 141 So.2d 828 (1962), and Louisiana State Bar Association v. Wheeler, 243 La. 618, 145 So.2d 774 (1962). (In the Pitcher and Cohen cases offers of voluntary resignations were refused.) But here we find certain unusual and extraordinary mitigating circumstances (hereinaft *34 er shown) that were not present in the cited cases and which might well serve to differentiate them from the instant proceeding.
The respondent is a young man who, at the time of his transgressions, had practiced as a member of the Louisiana Bar for only about one and one-half years. From birth he has been incurably and agonizingly afflicted with cerebral palsy. The affliction rendered his hands almost wholly useless, caused his entire body to shake continuously, effected an extremely noticeable impediment in his speech, and made walking desperately difficult for him. But despite the mentioned obstacles (no doubt there were and are others) he persevered through the university courses required to obtain his law degree, during which period he himself had to partially finance the attendant expenses and his impaired dexterity necessitated the assistance of a servant to care for many of his personal needs (such as carrying food trays, etc.). Incidentally, the members of respondent’s law class, on learning of his instant difficulty and realizing his abnormal physical condition, made individual contributions totaling $1,300 to help him in providing-restitution of the misappropriated funds. (He has expressed his appreciation for the various contributions, as well as the confidence in him thereby shown; but thus far he has refused to use the funds, preferring to make the entire restitution on his own.)
Following his induction into the Bar Association respondent first sought employment from established lawyers in Shreveport, but his efforts were unavailing. Thereafter he began practicing alone, sharing the expenses of an office in a downtown Shreveport commercial building with other young attorneys. However, primarily because of his physical handicap, his practice did not produce sufficient income to permit his remaining there; consequently, he removed it to his home where his wife performed his secretarial work. Later, finding himself unable to earn income from his law practice (the only vocation for which he was suited by training) sufficient to meet past obligations and to provide his family’s necessities he committed the violations on which this disbarment proceeding is based.
Shortly after the occurrence of the defalcation, and with' help from his mother and other relatives, he made restitution of $1,000. Also, the attorneys for two of the banks which had sustained losses cooperated in working out a regular monthly payment plan with which he could reasonably expect to comply (some payments were thereafter made). In this connection both of those attorneys wrote letters in which it is said that they believe respondent wants to make restitution, and will do so if financially able; and that he should be afforded the opportunity to attempt it (this we take to mean, as did the Commissioner, that leniency is recommended by them).
Other attorneys who have come in contact with respondent have written to the Committee asking it to give consideration to some disciplinary action short of disbarment. One of these is the attorney who represented him in criminal proceedings brought as the result of his wrongdoing, the bill of information filed having charged the commission of theft of $5,000 (on conviction of this crime the court could impose a sentence of imprisonment, with or without hard labor, for not more than ten years). Regarding such charge we note that, although there was no obligation on his part to do so, the district attorney permitted respondent to plead guilty to the reduced offense of unauthorized use of movables. The judge then accepted the plea and imposed a sentence of six months in the parish jail; and, later, he approved the release of respondent after the latter had served only three weeks of the sentence. Clearly, the actions of these two officials constitute mitigating circumstances and indicate a belief on their part that respondent should be shown leniency.
As is correctly said by the Commissioner in his report “a matter of this kind, involving, on the one hand, the protection of the courts and the public, and, on the other *35 hand, the entire future of an unfortunate young man, imposes a heavy duty on not only the Court but the Commissioner as well.” We might add that the duty of the Committee on Professional Ethics and Grievances, which has the troublesome (but nonetheless necessary) task of inquiring into matters of this kind, is equally weighty; and that it too is often faced with' the difficult responsibility of weighing its obligation to assist in maintaining the integrity and high standards of the legal profession against the interests of the individual attorney. Also, there is no doubt that in the instant proceeding the Committee has acted in its usual efficient manner and, after due deliberation, in accordance with the dictates of its own good conscience and with its appreciation of our former decisions.
Nevertheless, and without any intention of minimizing the grave nature of respondent’s errant and reprehensible conduct, we feel that in view of the unusual mitigating circumstances set forth above disciplinary action herein short of disbarment is warranted. Consequently, despite the opposition of the Committee, we have concluded that an acceptance of the resignation of respondent would be a proper disposition of this matter and would achieve what has been said to be the primary purpose of disbarment, namely, the protection of the courts and the public.
Such acceptance will permit respondent to demonstrate by his future conduct that he merited the confidence in him exhibited by the many attorneys who have sought to lend aid in his behalf. Moreover, it is appropriate to state that the record before us does not disclose an attitude on respondent’s part of complete disregard for his obligations as an attorney or of a lack of realization of the gravity of his aforedescribed conduct. To the contrary, both before the Commissioner and in this court he clearly displayed complete contriteness, as well as a willingness to attempt to atone for whatever harm has resulted from his misconduct to the individuals involved and to the good name and reputation of the legal profession.
For the reasons assigned the tendered resignation of Arthur B. Haack as. a member of the Louisiana Bar is accepted and, accordingly, it is ordered and decreed that the license of such respondent to practice law in Louisiana be cancelled and that his name be stricken from the roll of attorneys.
McCALEB, J., concurs in result.