184 So.2d 537

## LOUISIANA STATE BAR ASSOCIATION

v.

## Roy F. MAYEUX.

No. 47244.

March 28, 1966.

Walter G. Arnette, Jennings, A. K. Goff, Jr., Ruston, Pat W. Browne, Sr., A. Leon

Hebert, Baton Rouge, James H. Drury, Thomas O. Collins, Jr., New Orleans, for petitioner.

Roy F. Mayeux, in pro. per.

SUMMERS, Justice.

These proceedings for disbarment come within the exclusive original jurisdiction conferred upon this court by Article VII, Section 10 of the Louisiana Constitution of 1921, as amended.

On October 23, 1963 the Committee on Professional Ethics and Grievances of the Louisiana State Bar Association notified Roy F. Mayeux [1] that it was undertaking an investigation of his conduct as a member of the Bar of Louisiana, with a view to determining whether he was guilty of violations of the laws of the State of Louisiana relating to the professional conduct of lawyers and to the practice of law, and whether he had been guilty of a wilful violation of the rules of professional ethics of sufficient gravity to evidence a lack of moral fitness for the practice of law.

In the notice the Committee set forth eleven specifications, which, in their opinion, involved unethical and improper conduct by Mayeux.

By this notice, as required by the rules governing the Committee's procedure,[2] May-eux was advised that he would be given full opportunity to defend himself before the Committee.

On November 11, 1963, the day appointed for the hearing, Mayeux appeared, presented witnesses and documentary evidence, cross-examined the Committee's witnesses and made a statement for the record in mitigation of the charges lodged against him.

As a result of the hearing on the specifications, the Committee unanimously concluded that Mayeux was guilty of serious professional misconduct. Accordingly, in April 1964 a petition was addressed to this court, accompanied by a transcript of the hearing of November 11, 1963, praying that a commissioner be appointed to take evidence, and, in due course, report to this court his findings of fact and conclusions of law and that, ultimately, Mayeux be disbarred.

Mayeux filed an answer to this petition in which he denied that he had been convicted of any violation of the laws of the State of Louisiana of sufficient gravity to warrant his disbarment, or that he was guilty of such wilful violations of the rules of professional ethics as to evidence on his part a lack of moral fitness for the practice of law. He denied that he was guilty of "misconduct as set forth in the specifications."

---

1. Articles of Incorporation of Louisiana State Bar Association, art. 13, §§ 2 and 3.

2. Articles of Incorporation of Louisiana State Bar Association, art. 13, § 3.

Issue having been joined,[3] Honorable Richard C. Meaux, attorney at law of the Lafayette Louisiana Bar, was appointed Commissioner to take the evidence and to report his findings of fact and conclusion of law to this court. In time the Commissioner held a hearing on June 4, 1965, wherein respondent Mayeux appeared and sought a continuance which was denied. He presented no evidence at this hearing. The transcript of the evidence previously taken at the hearing on November 11, 1963 was filed in the record of the Commissioner's hearing and constitutes all of the evidence at this latter proceeding relating to the charges against respondent.

The Commissioner then filed in this court an exhaustive, carefully prepared and able report in which he analyzed the law and facts most thoroughly. His conclusion was that respondent was guilty of failure to faithfully and honestly discharge his professional and legal duty to report, account for and remit the monies of his clients; that he issued various N.S.F. checks; failed to pay the salary of his law office employee; that he converted the property of his clients; commingled money of his clients with his own and used the funds for his own purposes. It was the Commissioner's recommendation that respondent be disbarred. The Committee on Professional Ethics and Grievances concurred in the report.

■ Respondent filed no exceptions to the Commissioner's report, and it stands confirmed. Articles of Incorporation of Louisiana State Bar Association, art. 13, § 9; Louisiana State Bar Association v. Wheeler, 243 La. 618, 145 So.2d 774 (1962).

■ Moreover, respondent filed no brief, and he made no appearance in person or through counsel at the hearing before this court on January 18, 1966. Under these circumstances it may be proper to conclude that respondent has abandoned his opposition. However, in view of the grave consequences of disbarment to the party involved, we must carefully review the entire record of these proceedings. We have reviewed the record and are in substantial agreement with the Commissioner on all specifications save one; and, accordingly, we approve the Commissioner's recommendation.

The Commissioner found that the Committee had failed to prove the charges contained in Specification Nos. 1, 5 and 11. As the Committee, in its brief to this court, accepts the findings of the Commissioner relative to these unproven specifications, we need not refer to them here.

In Specification No. 2 it is charged that on August 11, 1962 respondent negotiated his check as attorney at law and received the sum of $25 cash. The check was returned to the payee by the drawer bank

3. Articles of Incorporation of Louisiana State Bar Association, art. 13, § 7.

because there were insufficient funds in respondent's account. Despite repeated formal demands respondent refused, failed and neglected to make the check good until more than one month had elapsed—after the matter was reported to the Committee on Professional Ethics and Grievances. This charge is supported by the evidence.

Specification No. 3 charges that respondent represented Bobby L. Durham in a personal injury claim. Respondent received a check in the sum of $1,675 in compromise of that claim made payable to him and his client. It is further alleged that the client did not endorse the check despite the fact that it bears what purports to be his signature, and respondent has never accounted to his client for that portion of the compromise settlement belonging to the client.

This charge is not entirely correct, and our review of the evidence permits a conclusion that the endorsement of the client's signature to the check was authorized. Though respondent did belatedly account to the client for a portion of the amount of the compromise settlement, because he had diverted his client's funds to his own use, it was necessary for him to give his promissory note for slightly more than $900 for the balance. The full amount of this balance had not been paid at the time of the hearing, though more than three years had elapsed since the settlement was made. This delay may be attributed in part to the forbearance of the client, induced by the friendly relations which existed between them; however, the attorney's wilful and unprofessional conduct violated an important canon governing the position of trust which an attorney occupies in relation to his client. That canon is, in part, to the effect that,

"The lawyer shall refrain from any action whereby for his personal benefit or gain he abuses or takes advantage of the confidence reposed in him by his client.

"Money of the client or collected for the client or other trust property coming into the possession of the lawyer shall be reported and accounted for promptly, and should not under any circumstances be commingled with his own or be used by him." Articles of Incorporation of Louisiana State Bar Association, art. 14, § 11.

The facts established, though not in strict conformity with the charge, are nonetheless sufficient to support grave violations of professional conduct. Louisiana State Bar Association v. Wheeler, 243 La. 618, 145 So.2d 774 (1962); Louisiana State Bar Association v. Pitcher, 238 La. 649, 116 So.2d 281 (1959).

Specification No. 4 charges that respondent did not pay his secretary her wages, and it was necessary for her to institute suit and obtain judgment. The judgment had not been paid at the time of the hearing. The evidence supports the charge. As the Commissioner observed, failure of an attor-

ney to pay his lawful obligations injures his reputation and brings disrepute upon the profession as a whole.

Specification No. 6 charges that in November 1962 respondent was employed through a New Orleans attorney by the Rexair firm to collect $100 from a Lafayette resident. Respondent collected the $100 and issued his check to the client as a remittance—not charging a fee. The check was returned "N.S.F.", and upon advice of respondent's wife it was deposited again and returned a second time for the same reason. It is further charged that respondent has failed, refused and neglected to account to his client for these funds.

The charge is not entirely supported by the evidence. It is true that it was established at the hearing that respondent issued the N.S.F. check in settlement of the collection, but on December 11, 1962 he paid the $100. He has not, therefore, refused to account to his client. The circumstances, however, strongly indicate that respondent diverted the funds of his client to his own use or commingled them with his own.

Specification No. 7 sets forth that prior to August 1960 respondent represented Royal Tire Service, Inc., of Lafayette for whom he arranged a loan with the Small Business Administration. The charge is that respondent's interference with the business caused it to fail. This business, it appears, was owned by Mr. and Mrs. John L. McDonough. The specification further charges that respondent sold the McDonough's boat and failed to remit to them despite repeated demand.

We do not consider these charges proven with that degree of certainty which the law requires. Especially is this true with respect to the allegation that respondent interfered with the business and caused it to fail. And, as for selling the boat valued at $75, the evidence is conflicting. This seems to be a situation where there was a misunderstanding between people who were formerly very friendly. Respondent takes the position the McDonoughs gave him the boat in payment for legal services he performed for them. The McDonoughs did leave their boat at respondent's house for a protracted period of time, and he takes the position this circumstance supports his contention that they gave him the boat in payment of services. And it is clear that he did perform services for them worth far in excess of the boat's value, for which he never billed them. This, together with the conflicting testimony of the witnesses, leaves us in serious doubt regarding the validity of this charge.

The next Specification (No. 8) concerns more "N.S.F." checks. One check was negotiated on December 31, 1962 for $20 and another on January 4, 1963 for $15. Despite several demands for payment they were not paid. Criminal charges were filed and were pending at the time of the hearing. Respondent did seek to make restitu-

tion after the charges were filed, but restitution was refused by the payees of the checks.

We agree with the Commissioner's finding that this incident brings disrepute to respondent and his profession.

Specification No. 9 charges that in the month of August 1961 respondent was retained by Mr. and Mrs. Johnnie Claude Hicks on a contingent basis in connection with a claim for damages arising out of an automobile collision. Respondent filed suit, and on June 7, 1962 had his clients sign a settlement for $3,050, approximately $2,000 of which was due them after deducting his contingent fee. However, he failed and neglected to remit to them; and, after his clients employed an attorney to collect from him, he admitted that he had commingled the funds with his own, had spent the money and was unable to remit. He then sought to satisfy his clients by executing a promissory note on August 14, 1962, stipulating for the payment of $50 per month. It is charged that he has only paid $200 to the clients, $100 on the note and $100 to reimburse them for expenses incurred in their attempt to collect from him.

■ This charge is supported by the evidence, except that it must be mentioned that at the time of the hearing respondent had paid all but $600 on the note. Moreover, we have noted that Mrs. Hicks is a relative of respondent; and Mr. Hicks tes-

tified that if the note were brought to a current status, and the monthly payments were timely made, he would be satisfied. Objection was made by the Committee to this latter testimony which the Commissioner sustained on the authority of In re Craven, 204 La. 486, 15 So.2d 861 (1943) and the following statement taken from 7 C.J.S. Attorney and Client § 25, viz.:

"Payment or application of the amount due or withheld, when made by the attorney after the proceedings for disbarment have been commenced, or are about to be instituted, does not operate to relieve one from the liability already incurred, and the court may still proceed to disbar him. A fortiori, a mere intent, or offer to make restitution, or a tender of the money withheld, constitutes no defense."

■ The rule announced above does not preclude the introduction of Mr. Hicks' testimony in evidence, it is simply to the effect that such evidence is not recognized as an absolute defense by the law. But it may be considered by the court with other facts in determining whether the overall pattern of conduct of the attorney is such that disciplinary action is proper.

■ The last Specification (No. 10) remaining for our consideration represents that in the fall of 1959 Murphy P. Meyers, Sr., doing business as Murphy Welding Service, retained respondent to collect an

account of $902.08 owed by Bankhead Drilling Company, Inc., together with another account of $18.96 owed by Rebo Construction Company, Inc. On April 13, 1960 respondent received a check from Bankhead Drilling Company for $902.08 payable to his client. He collected the Rebo Company account during the same month. Without authority respondent endorsed these checks and converted the funds to his own use. He did not remit to his client or advise him that the collections were made.

This charge is supported by the evidence, subject to the qualification that in April 1963 the $18.96 Rebo account was paid, and a small payment of $25 was made on the $902.08 Bankhead account.

There are letters in the record written by respondent to the Committee in which he professed his regret for the individual occurrences and pledged there would be no recurrences. And throughout these proceedings he has strenuously urged his dire financial circumstances during the period involved in mitigation of the offenses. However, the inability of this young man to accustom himself to professional discipline, the repetitious character of these transgressions, and the repeated disregard shown for the trust reposed in him as an attorney, compel our concurrence with the recommendation of the Commissioner. This is not a case of an isolated incident of wrong-doing or professional misconduct, where mitigating circumstances might persuade us

not to disbar; but, to the contrary, it is a case of repeated offenses during an extended period of time, demonstrating unmistakably respondent's present unfitness for the practice of law.

For the reasons assigned, it is ordered, adjudged and decreed that the name of Roy F. Mayeux, respondent herein, be stricken from the roll of attorneys and that his license to practice law in Louisiana is hereby cancelled.