Argued September 17; petitioner disbarred October 1, 1940

IN RE KING
(105 P. (2d) 870)

*James K. King* and *E. O. Immel*, both of Eugene, for petitioner.

*Clifford G. Holland*, of Portland, for Oregon State Bar.

KELLY, J.  On November 3, 1938, the Oregon State Bar filed a complaint against James K. King, an attorney of this court, charging him with unprofessional conduct.  On the 6th and 7th of February, 1939, a trial was had before the Trial Committee at which Mr. King appeared in person and by counsel.  There were seventeen alleged causes of complaint.  During the course of the trial, the 6th, 7th and 17th causes of complaint were dismissed on motion of the prosecutor of the Oregon State Bar.

The first cause of complaint, in effect, charges defendant with having converted to his own use the approximate sum of $795.62 belonging to Winifred Russell.

The second cause of complaint, in effect, charges defendant with having converted to his own use the sum of $795.62, or a portion thereof, belonging to Vivian Oliver.

These first two causes of complaint are based upon the same transaction.  In December, 1937, three sisters, namely, Pearl Satterfield of Junction City, Oregon, Vivian Oliver of Los Angeles and Winifred Russell of Vallejo, California, agreed to sell certain real property held by them as tenants in common, in Eugene, Oregon, to Sol Rosenberg and Rebecca Rosenberg of Eugene, for the sum of $2,500.  Mr. Rosenberg paid the sum of $100 to Pearl Satterfield, and deposited the sum of $2,400 with the Lane County Abstract Company under an escrow agreement under which Pearl

Satterfield, Vivian Oliver and Winifred Russell also deposited their deed conveying said real property to the Rosenbergs.

The defendant was employed by the three grantors named to receive from said escrow the sum of $2,400 less certain fees, costs and expenses; then forthwith to pay the sum of $10 to Pearl Satterfield and then forthwith to pay to said three grantors in equal shares the sum of money remaining.

On or about the 27th day of December, 1937, the escrow agent paid the approximate sum of $2,396.86 to defendant for repayment to said three grantors, whereupon said defendant paid the sum of $805 to Pearl Satterfield and retained the remaining approximate sum of $1,594.24 which defendant had been instructed forthwith to pay in equal shares to Vivian Oliver and Winifred Russell.

## "VII.

"That thereafter and until on or on about the 4th day of February 1938, James K. King failed and refused to pay the said approximate sum of $1,594.24 in equal shares to Vivian Oliver and Winifred Russell, and on said date, the 4th day of February, 1938, after insistent demand on the part of Winifred Russell, James K. King mailed to Winifred Russell his check in the approximate sum of $795.00 drawn on the Eugene Branch of the United States National Bank of Portland in favor of Vivian Oliver, and his check in the same approximate sum drawn on the same bank in favor of Winifred Russell with instructions to Winifred Russell to forward to Vivian Oliver the check last referred to.

## "VIII.

"That the said check drawn by James K. King to Winifred Russell as payee was not signed by James K. King when received by Winifred Russell on or about the 6th day of February, 1938, whereupon, Winifred

Russell returned said check to James K. King for his signature, but James K. King thereafter failed and refused to sign and return said check to Winifred Russell and failed and refused to pay her the said approximate sum of $795.62, or any part thereof, until on or about April 14, 1938, on which date he remitted the sum of $295.00 to Winifred Russell after repeated and insistent demand, and when he knew his failure and refusal to pay Winifred Russell was under investigation by the Oregon State Bar.

"IX.

"That after the 14th day of April, 1938, and until the 26th day of April, 1938, Winifred Russell made further repeated and insistent demand upon James K. King for payment of the approximate sum of $502.62, being the remaining approximate sum then due her from James K. King, but James K. King failed and refused to pay Winifred Russell the said sum, or any part thereof, until the 2nd day of May, 1938, on which date he paid Winifred Russell the sum of $522.62 from funds borrowed by him, and when he also knew his failure and refusal to pay Winifred Russell was under investigation by the Oregon State Bar.

"X.

"That upon receiving the said approximate sum of $795.62 for repayment to Winifred Russell on or about the 27th day of December 1937, James K. King then and there was acting as attorney and agent for Winifred Russell, and he then and there knew that the said sum was paid to him for payment forthwith to Winifred Russell, and James K. King then and there having said sum in his possession and under his care, then and there, with intent to injure and defraud Winifred Russell, knowingly, wrongfully and feloniously appropriated the said approximate sum of $795.62 to his own use and benefit."

The second cause of complaint realleges by reference the foregoing quoted allegations of the first cause and further alleges:

On or about the 8th day of February, 1938, Vivian Oliver deposited the check drawn to her as payee by defendant as payor in the Seventh and Alvarado Branch of the Citizens National Bank of Los Angeles, to which bank the Eugene Branch of the United States National Bank of Portland returned said check marked, "not sufficient funds" on or about the 12th day of February, 1938.

"III.

"That at the time James K. King issued said check to Vivian Oliver there were not sufficient funds belonging to James K. King on deposit in the Eugene Branch of the United States National Bank at Portland from which said check could be paid, or there being at the time said check was drawn in favor of Vivian Oliver, sufficient funds on deposit from which said check could be paid, James K. King thereafter and before said check was returned to the Eugene Branch of the United States National Bank of Portland, issued other and additional checks which depleted the balance in his account in said bank to the extent that the check issued to Vivian Oliver could not be paid."

The fourth cause of complaint charges:

"II.

"That on or about the 15th day of June 1933, Abbie J. Haskell, then of Eugene, Oregon, now deceased, delivered to James K. King the sum of $1,000.00 in trust for the use and benefit of Alice B. White, then of Eugene, Oregon, now of Portland, Oregon, and on said date, the 15th day of June 1933, James K. King acknowledged to Abbie J. Haskell his receipt of said trust fund and his understanding concerning the manner in which the same was to be deposited and administered.

"III.

"That on or about the 15th day of June, 1933, James K. King deposited the said sum of $1000.00 in the Eu-

gene Branch of the First National Bank of Portland under an account styled James K. King, Trustee.

## "IV.

"That during the month of January 1934, Abbie J. Haskell required the said sum of $1000.00 for the use and benefit of Alice B. White, and Abbie J. Haskell thereupon demanded of James K. King that the same be paid over to her, but James K. King failed and refused to pay Abbie J. Haskell the said sum or any part thereof until after further and insistent demand and delay when James K. King paid to Abbie J. Haskell the sum of $500.00 purportedly from said trust fund.

## "V.

"That during or about the month of March 1934, James K. King borrowed the sum of $500.00 from Abbie J. Haskell and gave Abbie J. Haskell his promissory note therefor, and during or about the month of May 1934, James K. King borrowed the further sum of $500.00 from Abbie J. Haskell and gave Abbie J. Haskell his receipt therefor, and on or about the 15th day of June 1934, Abbie J. Haskell assigned said note and receipt to Alice B. White and instructed James K. King to pay to Alice B. White the $1000.00 being the total amount of said loans, and the further sum of $400.00 purportedly remaining in trust.

## "VI.

"That Abbie J. Haskell died on or about the 23rd day of June 1934, and thereafter Alice B. White demanded payment of the total sum of $1400.00 from James K. King, being the total amount of said loans and the sum of $400.00 purportedly remaining in trust, but James K. King failed and refused to pay Alice B. White the said sum or any part thereof.

## "VII.

"That on or about the 19th day of July 1934, Alice B. White made further and insistent demand upon James K. King for payment of the sum of $1400.00,

whereupon, James K. King gave to Alice B. White his promissory note for the sum of $1400.00 and a mortgage on his law books and office furniture purportedly securing payment of said note.

## "VIII.

"That although Alice B. White and her attorney have repeatedly and insistently demanded payment of said note in accordance with the terms thereof, James K. King has failed and refused and now fails and refuses to pay said note or any part thereof, save and except the sum of $190.00 which James K. King has paid in installments at various times since said note was given to Alice B. White.

## "IX.

"That applying said sum of $190.00 paid by James K. King to the sum of $400.00 purportedly remaining in trust, James K. King is willfully, wrongfully and unlawfully withholding payment to Alice B. White of the sum of $210.00 paid to him in trust as aforesaid; that applying the said sum of $190.00 to either of said loans made to James K. King by Abbie J. Haskell in the sum of $500.00 each and nothing to the sum of $400.00 purportedly remaining in trust, James K. King is knowingly, wrongfully and unlawfully withholding payment to Alice B. White of the sum of $400.00 paid to him in trust as aforesaid.

## "X.

"That at the time the said sum of $1000.00 was paid to James K. King as trustee, he then and there knew the purposes for which the said sum was paid to him, and James K. King then and there knew the form and manner in which he was to administer said trust, and James K. King then and there knew the said trust fund or any part thereof was to be paid to no person or persons save and except Abbie J. Haskell during her lifetime, or to Alice B. White after the death of Abbie J. Haskell, and James K. King then and there having the said sum of $1000.00 under his control and in trust for Abbie J. Haskell and Alice B. White, withdrew said trust fund and accrued interest thereon from said bank

on and between the 25th day of July 1933 and the 20th day of January 1934, and James K. King then and there, with intent to defraud Abbie J. Haskell and/or Alice B. White, then and there knowingly, wrongfully and feloniously appropriated the said sum of $1000.00 and accrued interest thereon in the sum of $2.07 to his own use and benefit.''

By reference, the fifth cause of complaint embraces the facts stated in the first seven paragraphs of the fourth cause, the same being the paragraphs II to VII both inclusive, above quoted, and the allegations to the effect that the Oregon State Bar is an agency of the state of Oregon existing under and by virtue of the laws of the state of Oregon, and that defendant is duly admitted to practice law in Oregon.

Said fifth cause of complaint expressly alleges the following:

"II.

"That at the time James K. King gave Alice B. White the said mortgage on his law books and office furniture, James K. King had previously given other mortgages on the same property which he knew were superior in right to the mortgage given to Alice B. White, and James K. King failed and refused at said time to inform Alice B. White of the existence of said prior mortgages.

"III.

"That the time James K. King gave to Alice B. White said mortgage on his law books and office furniture and failed and refused to inform Alice B. White of said prior mortgages, he then and there knew that he had previously given prior mortgages on said property and that said prior mortgages were superior in right to the mortgage given to Alice B. White, and James K. King then and there knowingly, wrongfully and unlawfully gave said mortgage to Alice B. White and failed and refused to inform her of said prior mortgages and their superior right, with the intent and

purpose of defrauding, misleading and deceiving Alice B. White.''

The Trial Committee unanimously found the defendant guilty of the charges set forth in the first and fifth causes of complaint and two of the three members of the Trial Committee found him guilty of the charge set forth in the fourth cause of complaint. One member of the Trial Committee was unable to concur with the other two members thereof in their finding on the fourth cause of complaint.

The Trial Committee recommended that the defendant be permanently disbarred from the practice of law.

The Trial Committee found that the Oregon State Bar had not sustained the charges set forth in the second, third, eighth, ninth, tenth, eleventh, twelfth, thirteenth, fourteenth, fifteenth or sixteenth causes of complaint.

On November 15, 1939, defendant filed an application with the Oregon State Bar asking the Board of Governors thereof for a hearing de novo on the charges against him and on the findings and recommendations of the Trial Committee. This application was granted and such a hearing was had.

Thereafter, to-wit, on the 9th day of December, 1939, the Board of Governors of the Oregon State Bar made findings to the effect that of the charges set forth in the first, second, fourth, and fifth causes of complaint the accused is guilty; and that of the charges set forth in the third, eighth, ninth, tenth, eleventh, twelfth, thirteenth, fourteenth, fifteenth and sixteenth causes of complaint, the accused is not guilty.

The Board of Governors, by an affirmative vote of eight of the nine members present, recommended

that the accused James K. King be permanently disbarred.

One member of the Board of Governors recommended the imposition of a relatively long period of suspension.

On February 8, 1940, defendant filed a petition in this court for a review of the foregoing decision and recommendation of the Board of Governors of the Oregon State Bar; and upon the 10th day of March, 1940, defendant filed his brief. On the 8th day of April, 1940, the brief on behalf of the Oregon State Bar was filed, and the cause was set for hearing in this court on May 23, 1940. Upon the attention of this court being called to the fact that issues were joined upon an appeal from a judgment of criminal conviction of defendant rendered in the circuit court of Lane county on the 23rd day of June, 1939, the hearing of the disbarment proceeding was postponed until the final disposition of defendant's appeal in the criminal case. The crime of which the defendant herein was convicted is known to the statute of Oregon as false swearing.

On the 2nd day of July, 1940, this court affirmed judgment of conviction of *State v. King*, p. 26 supra, 103 P. (2d) 751, and upon the 10th day of September, 1940, defendant's motion for rehearing therein was denied.

''The only difference in definition between the crime of perjury and that of false swearing, under the present law of Oregon, is that to constitute the former, the false statement must be *material* to the matter concerning which the oath is taken, whereas the materiality of the false statement is not essential to the latter.'' State v. King, supra.

■■ The statute provides that an attorney may be removed or suspended upon his being convicted of a misdemeanor involving moral turpitude in which case

the record of his conviction is conclusive evidence. Section 32-502, Oregon Code 1930. The conviction of defendant of such a misdemeanor is within our judicial knowledge. While it is not made the basis of any charge in the complaint herein, we are unwilling to omit reference to it. Such omission might lead to the view that we deem it trivial and unworthy of consideration. This court entertains exactly the opposite view. Such a crime involves moral turpitude and merits either suspension or permanent disbarment.

Under the statute of Minnesota similar to that of Oregon, except that the Minnesota statute makes the wilful signing of a frivolous pleading ground for removal or suspension [Sec. 5697, Gen. Stat. Minn. 1923.], the supreme court of Minnesota, in dealing with a case of false swearing, said:

"The question remaining is whether the giving of the false testimony constitutes professional misconduct under our statute (G. S. 1923, Sec. 5697). That it does we can have no doubt. Hertz, licensed by this court, was testifying before the United States district judges. He had knowledge of the facts, and testified untruly. It is not important whether perjury could be predicated upon his testimony. In re Popper, 193 App. Div. 505, 184 N. Y. S. 406. The inquiry was one which the United States district judges saw fit to make, and it was for Hertz to tell the truth. An attorney of this court cannot falsify before a federal tribunal and continue his practice in the courts of this state." *In re Hertz*, 169 Minn. 431, 211 N. W. 678.

Under a federal court rule, authorizing disbarment for any sufficient cause, perjury, regardless of the materiality of the false testimony, is sufficient ground therefor since it involves moral turpitude and a conviction therefor need not have been returned. *In re Ulmer*, 208 Fed. 461.

The filing of a false affidavit has been held by this court to be ground for suspension of an attorney. *State v. Woerndle*, 109 Or. 461, 209 P. 604, 220 P. 744.

The foregoing cases and others are cited in annotations to be found in 9 A. L. R. 200, 43 A. L. R. 110, 55 A. L. R. 1375.

■ For the reason, that, in our opinion, the record in the instant disbarment proceeding discloses misconduct on defendant's part for which he should be disbarred, we deem it unnecessary to institute or direct the institution of further proceedings of disbarment based upon defendant's criminal conviction.

No good purpose can be served by reviewing the testimony. Suffice it to say that the defendant's admissions alone support the conclusion we have reached herein.

On the 24th day of September, 1940, the defendant filed in the office of the county clerk of Lane county, where defendant resides, his written resignation as an attorney. Pursuant to the statute [§§ 32-401 and 32-402, Oregon Code 1930], the county clerk of Lane county has forwarded a certified copy of defendant's resignation to the clerk of the supreme court, who has filed the same in his office on September 25, 1940.

■ The resignation of an attorney, without consent of the court, is ineffectual to preclude his disbarment when proceedings therefor were pending at the time of his resignation. *Ex Parte Thompson*, 32 Or. 499, 52 P. 570, 40 A. L. R. 195.

Based upon the record before us in this disbarment proceeding, this court concurs in the recommendation of the Trial Committee and the majority of the Board of Governors that the defendant should be disbarred and it is so ordered.

The Oregon State Bar suggests that a judgment for costs and disbursements should be entered against defendant; and in support of this suggestion cites *Ex Parte Thompson,* supra, and *Ex Parte Ditchburn,* 32 Or. 538, 52 P. 694. Both of these cases were tried under the statute requiring the supreme court to entertain, hear and determine charges of unprofessional conduct against attorneys. Hill's Annotated Laws of Oregon (1892), pp. 690, et seq. Title V, §§ 1048, 1049, 1050, 1051, 1052 and 1053. Oregon Code 1930, §§ 32-511, 32-512, 32-513, 32-515, 32-516 and 32-517. It appears that in the Thompson and Ditchburn cases, *supra,* the allowance of costs was made pursuant to the provisions of section 7-622, Oregon Code 1930.

■ The course taken in the instant case is not governed by the statute of 1862, above cited, which requires the supreme court to conduct a trial when issues are joined upon charges of alleged unprofessional conduct. On the contrary, the course taken herein is merely a review of the findings and recommendations of the Board of Governors of the Oregon State Bar. It is not an appeal from the judgment of a court, and therefore, the general statute providing for the recovery of costs and disbursements can have no application. *State ex rel. v. Estes,* 34 Or. 196, 213, 55 P. 25, 28. The statute prescribing the course taken herein controls, and the right to recover costs, if any, must be found in such statute. No such provision is to be found therein. For that reason, and upon the authority of *In re Ankelis,* 164 Or. 676, 103 P. (2d) 715, costs are not allowed to either party hereto.

BEAN and ROSSMAN, JJ., not sitting.