Submitted on record and briefs December 17, 1986, accused disbarred January 21, reconsideration denied February 24, 1987

In re Complaint as to the Conduct of

# HAL F. COE,
*Accused.*

## (OSB 82-132; SC S33212)

731 P2d 1028

Mark M. Williams, Assistant General Counsel, Oregon State Bar, Lake Oswego, for the Oregon State Bar.

No appearance contra.

PER CURIAM

## PER CURIAM

The Oregon State Bar (Bar) has charged the accused with violation of *former* DR 1-102(A)(4),[1] DR 7-102(A)(8) and DR 2-110(A)(1) and (A)(2) of the Code of Professional Responsibility, all in connection with his conduct as personal representative and attorney in the probate of the estate of Edith Matney. In general, the complaint charges that the accused improperly paid to himself attorney and personal representative fees and left the county and abandoned his practice without concluding probate or arranging that it be done.

The Bar filed its complaint on March 13, 1986. The accused was served by publication pursuant to order of this court. On March 20, 1986, the accused filed an unverified document, in which he purported to appear specially and "not admitting jurisdiction." In that document he moved to dismiss the complaint, basing his motion on an assertion that the complaint was not filed timely "on Statute, Laches, and Bar Rules," on state and federal "due process grounds * * * in that no proper service has been effected," and that because he had chosen not to pay bar dues, "the Bar has no jurisdiction." The document further stated that if the motions were not allowed, the allegations of the complaint had no merit and were "totally denied." He affirmatively alleged that the estate had been probated and that a fee was owed to him, that the probate court had authorized the payment of fees to him, and that any subsequent acts of the probate court "were improper in that Complainant [sic (meaning himself)] was never offered a hearing on the matter of a fee."

Before the Disciplinary Board's trial panel, the Bar moved for an order striking the document from the record for failure to verify and failure to serve properly. BR 4.3(d) requires that an accused's answer to a formal complaint must be verified and must be served on Bar counsel. Despite the fact that the document was not verified and was not served on Bar counsel, the trial panel chairperson denied the motion. It should have been allowed.[2] Notwithstanding that, we note

---

[1] Substantially the same rule is now numbered DR 1-102(A)(3), which provides: "It is professional misconduct for a lawyer to: * * * Engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[2] As noted above, the accused "totally denied" the complaint. BR 4.3(d) provides in part: "General denials shall not be allowed."

that the accused's motion does not specify any statute or Bar rule that made the filing of the complaint untimely. The allegation that the filing was untimely because of laches is a mere legal conclusion without any supporting allegations of fact. That motion should have been, and now is, denied. The motion to dismiss for want of due process under the state constitution should have been, and now is, denied because there is no due process provision in the Oregon Constitution. As for the federal constitution, there was no want of due process because there was proper service of the complaint and notice to answer under the order of this court, and the accused obviously had actual notice of the Bar's charges.

The accused's motion to dismiss on the basis that because he had not paid his bar dues the Bar had no jurisdiction over this proceeding is not so easily answered. Although he did not directly hit on it, the real question is whether this court has jurisdiction. The Bar, in disciplinary proceedings, receives complaints concerning lawyers' conduct, investigates those complaints and, where warranted, initiates charges of misconduct. Those charges are filed in this court, and the proceedings are conducted by the Disciplinary Board as an arm of this court. ORS 9.534.

The record shows that at least as early as July 1982, complaint was made to the Bar about alleged misconduct of the accused in the probate of the Matney estate. This complaint sparked countercharges by the accused that an attorney for the successor personal representative and a circuit court judge of the probate court were guilty of misconduct with respect to the probate. Correspondence between the Bar and the accused continued over the charges and countercharges. The letters from the Bar to the accused made it clear that if he were not to make some valid explanation that would avoid the charges, the Bar would institute formal charges. Bar counsel was appointed prior to October 11, 1983, to prepare and file formal charges. The Bar attempted to notify the accused of this, but he could not be notified at the various addresses he gave to the Bar at that time as his mailing addresses. We infer that he was deliberately seeking to avoid receipt of mail from the Bar.

While he was avoiding delivery of letters and notices from the Bar, the accused failed to pay his dues and for this

failure was suspended under ORS 9.200, effective July 16, 1985. This suspension was still in effect when, in March 1986, the Bar's complaint, making formal charges, was filed in this court. This suspension is still in effect. The authority to suspend is found in ORS 9.200, which provides:

"(1) Any member in default in payment of membership fees established under ORS 9.191(1) for a period of 90 days, or any person in default in payment of membership fees established under ORS 9.191(2) for a period of 30 days after admission or as otherwise provided by the board, or any member in default in payment of assessed contributions to a professional liability fund under ORS 9.080(2) for a period of 30 days, shall, after 60 days' written notice of the delinquency, be suspended from membership in the bar. The notice of delinquency shall be sent by the executive director, by registered or certified mail, to the member in default at the last-known post-office address of the member. Failure to pay the fees or contributions within 60 days after the date of the deposit of the notice in the post office shall automatically suspend the delinquent member. The names of all members suspended from membership for nonpayment of fees or contributions shall be certified by the executive director to the State Court Administrator and to each of the judges of the Court of Appeals, circuit, tax and district courts of the state.

"(2) An active member delinquent in the payment of such fees or contributions shall not be entitled to vote.

"(3) A member suspended for delinquency in payment of such fees or contributions shall be reinstated only on compliance with the rules of the Supreme Court and the rules of procedure and payment of all required fees or contributions."

■ Insofar as statutory authority is concerned, this court has power to disbar, suspend or reprimand "members of the bar" under ORS 9.527, and the procedure for hearing formal charges against "members of the bar" is provided in ORS 9.534 to 9.536. Because the accused was suspended from "membership in the bar," did this court have any power to entertain charges when filed during the period of suspension, and does this court have any power to disbar, suspend or reprimand the accused in these proceedings? We conclude that we did and that we do.

Ever since the original code compiled by Deady, the statutes of this state have provided substantially as now does ORS 9.260:

> "An attorney may, at any time, file in the office of the executive director [of the Bar] a written resignation. After filing a resignation, the attorney is not entitled to the rights nor subject to the disabilities or prohibitions incident to that relation, *except that the attorney is still subject to the power of the court in respect to matters arising prior to the resignation of the attorney.*" (Emphasis added.)

While noticing the existence of this statute (then Hill's Annotated Laws, § 1045), this court in *Ex parte Thompson,* 32 Or 499, 501-02, 52 P 570 (1898), did not exactly apply it but reached the same result, saying:

> "An attorney is permitted, at any time, to file in the office of the county clerk of the county in which he resides a written resignation, upon receiving which it is made the duty of such clerk immediately to forward a certified copy thereof to the clerk of this court, who shall file the same in his office. After filing such resignation, the attorney is not entitled to the rights nor subject to the disabilities or prohibitions incident to that relation, except that he is still subject to the power of the court in respect to matters arising while he was an attorney: Hill's Ann. Laws, §§ 1045, 1046. The courts of England, at the beginning of the nineteenth century, adopted a rule which provided that the name of an attorney would not be stricken from the rolls at his own request without an affidavit that he did not apply therefor under an apprehension that charges would be preferred against him: *Ex parte Owen,* 6 Ves. 11; *Ex parte Foley,* 8 Ves. 33. In New York it was held that, notwithstanding an attorney may have quit the practice of his profession, he was, nevertheless, amenable to the orders and process of the court as long as his name remained upon the roll of attorneys: *Scott v. Van Alstyne,* 9 Johns. 216.

> "Undoubtedly, section 1045, *supra,* was enacted in view of these rules, from which it would appear that, while an attorney may voluntarily resign his office, and thus relinquish the rights conferred by his admission to the bar, and escape the disabilities incident thereto, Thompson's resignation, not having been made with the consent or approval of this court, cannot have the effect of striking his name from the roll of attorneys, and, as long as his name remains thereon, he must be subject to its summary jurisdiction, and amenable to its orders and judgments, in so far as they relate to acts committed by him prior to his resignation. The accused, having been convicted of a felony while he sustained the relation of an attorney, ought not to be permitted, by his voluntary act, to have his name stricken from the roll of attorneys while

charges are pending against him. He had notice of the pendency of this proceeding, and was thereby afforded an opportunity of being heard, but failed to answer the accusation, thus tacitly confessing the truth of the charges, which is apparent from an inspection of the records of this court, to which our attention is particularly called: *State v. Thompson,* 28 Or. 296 (42 Pac. 1002)."

In *In re King,* 165 Or 103, 105 P2d 870 (1940), while charges were pending in this court, the lawyer filed a voluntary resignation. The court held:

"The resignation of an attorney, without consent of the court, is ineffectual to preclude his disbarment when proceedings therefor were pending at the time of his resignation. *Ex parte Thompson,* 32 Or 499, 52 P. 570, 40 A.L.R. 195."

165 Or at 114. Again the court did not rely on the statute, by then codified at Oregon Code Annotated § 32-401 (1930).

Now an attorney may not resign from the Bar without the consent of this court. BR 9.1. An attorney may not resign by a "Form A Resignation" (Non-Disciplinary Resignation) if allegations of alleged misconduct are under investigation by the Bar. BR 9.1.

Under both case law and the Rules of Procedure adopted by the Board of Governors of the Oregon State Bar and approved by this court pursuant to ORS 9.005(6) and ORS 9.542, therefore, an attorney may not accomplish a voluntary resignation while allegations of alleged misconduct are being heard or even just being investigated by the Bar. In addition, under ORS 9.260 an attorney who does accomplish resignation is yet "subject to the power" of this court in respect to matters arising prior to the resignation.

We perceive no reason that an attorney should be allowed to accomplish indirectly by his voluntary act what he cannot accomplish directly. We hold that while he can give up his membership in the Bar by electing not to pay his dues, this will not forestall pending disciplinary action already underway; moreover, we shall apply the rule of ORS 9.260 to the attorney who voluntarily gives up membership by suspension and hold that he is "subject to the power of the court in respect to matters arising prior to the" suspension of the attorney.

As to the denial and affirmative allegations made

alternatively to the motions to dismiss, we shall reach those in our findings of fact and conclusions stated later in this decision.

The accused did not appear at the hearing conducted by the trial panel.[3] The trial panel found the accused guilty of violation of *former* DR 1-102(A)(4) and of DR 2-110(A)(2) but held there was not clear and convincing evidence of violation of DR 2-110(A)(1) and of DR 7-102(A)(8).

The decision of the trial panel was to suspend the accused from the practice of law for a period of one year and thereafter until he should both pass an examination on professional responsibility administered by the Board of Bar Examiners and pay to the clerk of the probate court the sum of $10,293.75.[4] Because the decision of the trial panel was to suspend the accused for a period longer than 60 days, this matter must be reviewed by this court. ORS 9.536(2).

Our review is de novo on the record, ORS 9.536(3) and BR 10.6, and the following are the facts we find from the record made before the trial panel.

In 1969 the accused drew a will for Edith Matney, in which the accused was named as executor. In October 1979 she died, and in November 1979 the accused filed a petition to probate the will in Klamath County and undertook to act both as attorney and as personal representative. The value of the estate was about $140,000. Until June 1980 the estate was administered in ordinary fashion.

The accused prepared a petition of himself as personal representative dated June 25, 1980, for partial payment

---

[3] Throughout the time the Bar was investigating the complaints against the accused, he furnished the Bar with addresses that he represented to be his in other states, Canada and Australia. Sometimes the Bar was able to communicate with him at such addresses and sometimes not. BR 1.12 requires all attorneys of this state to keep the Bar informed of their true addresses and promptly to report any changes. The Bar spent money in an unsuccessful attempt to have a notary in Australia trace the accused in the part of that country that he claimed as his address.

Two months in advance of the hearing scheduled by the trial panel, the accused was sent notice of time and place in care of his adult son in Klamath Falls. This was on May 28, 1986; the accused sent a letter to the Bar dated May 29, 1986, stating that he did not wish a hearing. From this we infer that he was given actual notice that the hearing would be held and the place and time thereof.

[4] This is the sum of personal representative and attorney fees taken by the accused from estate funds without authorization of the probate court.

of attorney fees. It contained a schedule of the charges for a list of things one would expect an attorney to do in connection with probating an estate. The amounts charged were reasonable. In addition, however, there appears the following entry: "58 hrs @ 75$\frac{00}{}$" with a charge of $4,350. There is no explanation whatsoever of what these 58 hours of work might have entailed. The total figure for attorney fees without this entry would indicate fees to that date of $975; including the item makes the total $5,325. The petition was for allowance of $5,000 partial fees.

The petition was never filed with the court, and no order was ever entered approving or authorizing partial payment as requested in the document; nevertheless, on June 27, 1980, in his capacity as personal representative, the accused drew a check on the estate funds payable to himself in the amount of $5,000 for partial payment of attorney fees. He cashed the check.

Without any court authorization, on July 30, 1980, as personal representative he drew another check on the estate funds for $1,537.50 for payment of what was described on the face of the check as "Balance of attorney's fee." He cashed that check.[5]

■■ The statutory authority for allowance of attorney fees to a personal representative is found in ORS 116.183(1), which provides that a "personal representative shall be allowed in the settlement of the final account * * * reasonable fees of * * * attorneys." The statute further provides:

> "An award of reasonable attorney fees under this section shall be made after consideration of the customary fees in the community for similar services, the time spent by counsel, counsel's experience in such matters, the skill displayed by counsel, the excellence of the result obtained, any agreement as to fees which may exist between the personal representative and the counsel of the personal representative, the amount of responsibility assumed by counsel considering the total value of the estate, and such other factors as may be relevant. * * *"

---

[5] According to a Final Account that he filed on October 18, 1980, he had also drawn another check, without prior court authorization or approval, in the amount of $325 for "the balance of attorney's fees * * * still outstanding." It does not appear that he ever cashed that check.

The statute does not specifically state that it is the probate court whose "consideration" is required, but we believe that because it is the court which has the authority to make the allowance, it must also be the court that is required to consider the items enumerated.[6] We can find no statute that provides for "partial allowances" of attorney fees; nevertheless, Rule 9.020(3) of the Klamath County probate court provided:

> "No allowance on account of attorney's fees shall be made except pursuant to an order approving the final account of the personal representative; provided, however, the Court may, upon proper showing of the personal representative, make such partial allowances as the Court deems proper as attorney's fees where it appears that the probate of the estate cannot reasonably be completed within a period of one year. Any such allowance, however, shall be subject to the personal representative being able to justify the amount of such allowances at the hearing on the final account if the amount allowed is questioned."

■ We shall assume, *arguendo,* that the probate court had authority to make and to act under this rule. The rule requires a "proper showing" to support an allowance. We conclude that the matters that must be shown would be of the same nature as required by ORS 116.183(1). In addition, the rule requires a showing that the probate of the estate cannot be reasonably completed within one year. Here, the petition prepared but never filed contained no allegation that the probate of the estate could not be completed within one year. In other words, even if the petition had been filed, as the accused alleged in his answer, it would not have supported a partial allowance of attorney fees under the rule.

Again, assuming the validity of the rule, which is the only possible authority for partial allowance of attorney fees, the rule requires that the allowance is subject, in the final analysis, to the personal representative's ability to justify the amount. Here, the accused, as personal representative at the time of payment of fees to himself, made no attempt to justify the amount when the matter came on for hearing on objections to the final account prepared by the accused. The objections were filed by David Matney, who was the decedent's son

---

[6] A personal representative may make a valid contract with an attorney to represent the personal representative in the probate of an estate, but the contract binds only the personal representative and the attorney. The personal representative may look to the estate for reimbursement only for the amount of reasonable fees. *In re Lachmund's Estate,* 179 Or 420, 170 P2d 748 (1946).

and was the primary beneficiary under the will. At the time of the hearing, of course, David had become the successor personal representative, and he, as objector to the accused's account, quite naturally made no effort to justify the allowance falsely asserted by the accused to have been made in his answer to the Bar's complaint herein. Indeed, David's objections were allowed, and the accused's petition for allowance of attorney fees in his final account was disallowed.

In summary, the accused, without even the excuse of compliance with Rule 9.020(3), in his capacity as personal representative, paid to himself, in his capacity as attorney for the personal representative, funds of the estate without compliance with the only statute governing the matter and without even complying with a court rule that might have justified that action.

On July 30, 1980, the accused, without any court approval or authorization, drew another check on estate funds in the amount of $3,431.25 payable to himself for "Personal Representative fee." ORS 116.173 governs payment of compensation for services as personal representative. The statute grants entitlement to such fees only "[u]pon application to the court." This same statute sets the amount of compensation that the court may allow. The accused did not even make any application in his never-filed petition dated June 25, 1980, for compensation for services as personal representative. There was simply no authority, not even pretended, for his payment to himself of the $3,431.25.

This aspect is aggravated by the fact that he took more money from the estate funds than he would have been entitled had he followed Rule 9.020(1) of the probate court. This rule provided:

> "When the attorney also acts as the personal representative * * * the fee for the combined services shall be a sum equal to the attorney fee plus one-half of the statutory fee for the personal representative."

Following the rule would have yielded a fee for service of personal representative of just half of what the accused actually took.[7]

---

[7] Legal Ethics Opinion, No. 337 - Page 349, found in the Oregon State Bar Professional Responsibility Manual, states that an attorney may, after entry of an appropri-

On October 18, 1980, the accused filed a final account and petition for a decree of final distribution. He did not provide the statutorily required notice to the heirs. He never obtained approval of the final accounting. He never obtained approval of his payment to himself of attorney and personal representative fees. After filing the final account, the accused performed no further services for the estate, either in probate or otherwise.

The accused did not tell David that the accused had closed his law office and had left the area. The accused did not tell David that the accused would do no further work on the estate. The accused did not arrange for any other lawyer to proceed with the closing of the estate. The accused did not inform the court that he would do no further work after the filing of the final account, and he did not furnish to the court a new address. Rule 9.010(2) of the probate court required that an attorney in a probate matter call to the attention of the court any change in the attorney's address or telephone number when the change occurred.

When David learned that there must be other steps taken in the probate in order for him to carry on operation of the family farm, he tried to locate the accused but was unsuccessful. David then retained another lawyer who managed to secure the accused's file from the accused's former secretary. In May 1981, David's objections to the final accounting were filed, and his petition to remove the accused as personal representative was filed and allowed. David was appointed personal representative, and he and the successor attorney eventually obtained a decree sustaining David's objections to the payment to the accused of attorney and personal representative fees. The probate court entered a decree that the accused was without authority in making those payments and that he was to pay to the clerk of court the sum of $10,293.75 by June 30, 1982. Although he received a copy of that decree, the accused did not pay, and eventually the probate court entered its decree of final distribution and, among other things, granted

ate probate court order, obtain earned partial attorney and representative compensation. The opinion contains no discussion whatsoever of the statutes that are pertinent. The opinion seems to proceed on the major premise that there is no good reason why the attorney must wait until final conclusion. It may be that there is no good reason other than the statutes involved.

final judgment to the estate for that amount against the accused. The court further decreed that the judgment was the property of David. The accused has not paid that judgment.

The Bar's complaint charges that the foregoing conduct on the part of the accused violated *former* DR 1-102(A)(4), which provided: "A lawyer shall not: * * * Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

The trial panel concluded that the accused's conduct in paying himself the attorney and personal representative fees without prior authorization from the court was dishonest conduct and that *former* DR 1-102(A)(4) was violated as charged.

The Bar's complaint further charged that the conduct above recounted was a violation of DR 7-102(A)(8), which provides: "In his representation of a client, a lawyer shall not: * * * Knowingly engage in other illegal conduct or conduct contrary to a Disciplinary Rule." The trial panel concluded that this charge was not proven by clear and convincing evidence because the accused's conduct was not criminal, and the Bar had failed to specify any other disciplinary rule that had been violated by this conduct.

We come now to our own inquiry whether the foregoing conduct of the accused violated *former* DR 1-102(A)(4). It did if it involved dishonesty, fraud, deceit or misrepresentation.

■ ■ The accused drew the checks for attorney fees and personal representative fees in his capacity as personal representative. It is not necessary to a finding of violation of *former* DR 1-102(A)(4) that he acted in his capacity as lawyer. *In re Holman*, 297 Or 36, 57, 682 P2d 243 (1984); *In re Kenneth W. Stodd*, 279 Or 565, 568 P2d 665 (1977); *In re Warner W. Gregg*, 252 Or 174, 446 P2d 123, 448 P2d 547 (1968). As personal representative, the accused acted in a fiduciary capacity. ORS 114.265 provides: "A personal representative is a fiduciary * * *." ORS 114.395 provides:

"If the exercise of power by a personal representative in the administration of an estate is improper, the personal representative is liable for breach of fiduciary duty to interested

persons for resulting damage or loss to the same extent as a trustee of an express trust. * * *"

As personal representative, the accused was a fiduciary to an interested person, in this case David. The statute makes the fiduciary, for improper exercise of power, liable as if he were a trustee of an express trust.

 This accused, as personal representative, had possession of money that belonged to David, subject, of course, to proper use of the money in the administration of the estate. ORS 114.215(1)(b). When he, without proper authorization, paid that money to himself as attorney, he converted that money. As recipient of that money, he was yet again a converter and at that time converted the money to his own use. His liability to David was the same as that of a trustee.

We have held that "a lawyer who holds money in trust for another and converts that money to his own use has engaged in conduct 'involving dishonesty' within the meaning of [*former*] DR 1-102(A)(4)." *In re Holman, supra,* 297 Or at 57-58. We see no reason that the same should not hold true for the relationship between this accused on the one hand and the estate and the principal beneficiary on the other. The accused's conduct in paying to himself any amount as personal representative's fee is subject to the same analysis and result. It is of no consequence that he may have actually earned a part of the fees prior to the unauthorized payment.

 We hold that the conduct of the accused in paying to himself these fees was conduct involving dishonesty and a violation of *former* DR 1-102(A)(4).

Next, we consider whether the accused's conduct violated DR 7-102(A)(8), which provides that in representing a client a lawyer shall not "[k]nowingly engage in other illegal conduct or conduct contrary to a Disciplinary Rule."

It is to be recalled that the trial panel held that the accused had not been proven to have violated this rule. This was because the trial panel interpreted the rule to mean that only criminal conduct is illegal and that the Bar had not given the accused notice of any disciplinary rule on which the Bar relied for maintaining this charge.

The Bar argues that "illegal" has a broader meaning

than violation of a criminal statute. The Bar cites Black's Law Dictionary. The 1979 Fifth Edition defines "illegal" as follows: "Against or not authorized by law." We find this to be of little help.

The full text of DR 7-102(A) follows:

"DR 7-102 Representing a Client Within the Bounds of the Law.

"(A) In his representation of a client, a lawyer shall not:

"(1) File a suit, assert a position, conduct a defense, delay a trial, or take other action on behalf of the lawyer's client when the lawyer knows or when it is obvious that such action would serve merely to harass or maliciously injure another.

"(2) Knowingly advance a claim or defense that is unwarranted under existing law except that the lawyer may advance such claim or defense if it can be supported by good faith argument for an extension, modification or reversal of existing law.

"(3) Conceal or knowingly fail to disclose that which the lawyer is required by law to reveal.

"(4) Knowingly use perjured testimony or false evidence.

"(5) Knowingly make a false statement of law or fact.

"(6) Participate in the creation or preservation of evidence when the lawyer knows or it is obvious that the evidence is false.

"(7) Counsel or assist the lawyer's client in conduct that the lawyer knows to be illegal or fraudulent.

"(8) Knowingly engage in other illegal conduct or conduct contrary to a Disciplinary Rule."

This rule is concerned with prohibition of overzealous conduct that a lawyer might use to advance the interests of a client. Subsection (8) must be read in that context. The accused's actions were not taken for the purpose of advancing the interests of his client. The client was the personal representative. The personal representative's interest was to administer the estate properly. Rather than advancing the interests of the personal representative, the conduct of the accused was to advance his own interests to the detriment of the interests and

duties of the personal representative.[8]

■ We conclude that subsection (8) is not pertinent to the deplorable conduct of this accused; therefore, it is unnecessary for us to determine in this proceeding what is the meaning of "illegal" as used in that subsection.

This brings us to the charge that the accused violated DR 2-110(A)(1) and (A)(2), which provide:

"DR 2-110 Withdrawal from Employment.

"(A) In General

"(1) If permission for withdrawal from employment is required by the rules of a tribunal, a lawyer shall not withdraw from employment in a proceeding before that tribunal without its permission.

"(2) In any event, a lawyer shall not withdraw from employment until the lawyer has taken reasonable steps to avoid foreseeable prejudice to the rights of the lawyer's client, including giving due notice to the lawyer's client, allowing time for employment of other counsel, delivering to the client all papers and property to which the client is entitled, and complying with applicable laws and rules."

The trial panel found that there was no evidence of a rule of the probate court requiring permission for withdrawal and, accordingly, concluded there was no violation proved of DR 2-110(A)(1). We agree that there was no evidence of such a rule of the tribunal, *i.e.,* the probate court. The Bar argues, however, that ORS 9.380 fills the gap. This statute provides:

"The attorney in an action, suit or proceeding may be changed, or the relationship of attorney and client terminated, as follows:

"(1) Before judgment, decree or final determination, upon the consent of the attorney filed with the clerk or entered in the appropriate record of the court; or

"(2) At any time, upon the order of the court or judge thereof, based on the application of the client or the attorney, for good and sufficient cause."

---

[8] Legal Ethics Opinion, No. 223 - Page 226, found in the Oregon State Bar Professional Responsibility Manual, states that there "is no impropriety in an attorney's acting as the personal representative and as the attorney for the estate." Before undertaking that dual role, and any specific actions thereunder, every attorney would be well advised to carefully peruse Disciplinary Rule 5.

We disagree with the Bar. The text of the statute does not require the permission of the court to withdraw from employment. The Bar has not cited, nor have we been able to find, any decision of this court holding that the statute means what the Bar contends.

We conclude that the charge of violation of DR 2-110(A)(1) has not been established.

■ We agree with the trial panel and the Bar, however, that violation of DR 2-110(A)(2) has been established. We quote from the Bar's brief:

> "The Accused failed to take any steps to avoid foreseeable prejudice to the estate prior to closing his office in Klamath Falls and leaving the area. David Matney, the sole heir of the estate, was left in the position where the property of the estate and Matney's legal rights were in limbo. It was not until the spring of 1981, when David Matney discovered that he could not obtain financial assistance [a crop loan] in order to farm property belonging to the Matney estate, that he retained the services of another attorney to assist him in closing the estate. As the trial panel indicated in its opinion, '[The Accused] left the principal heir high and dry with no means to operate the farm he was heir to.' "[9]

The trial panel decided that a one-year suspension was the appropriate sanction, with certain conditions precedent to be met for reinstatement. The Bar urges a three-year suspension with the same conditions precedent. In *In re Germundson,* 301 Or 656, 724 P2d 793 (1986), *In re Luebke,* 301 Or 321, 722 P2d 1221 (1986), and *In re Bristow,* 301 Or 194, 721 P2d 437 (1986), we have suggested that the American Bar Association's "Standards for Imposing Lawyer Sanctions" (Standards) as approved February 1986 provide a good framework for determining what sanctions should be applied in disciplinary proceedings. We appreciate that the Bar has heeded that suggestion and in its brief has stepped through the suggested analysis.

This case is governed by our decisions in *In re Thomas,* 294 Or 505, 659 P2d 960 (1983), where a lawyer took

---

[9] By this quotation we do not mean to imply that we agree that the farm was the property of the estate. *See* ORS 114.215(2), providing that the title to Edith Matney's realty vested on her death in David as devisee.

unearned fees from estates and conservatorships without prior court approval, and *In re Pierson,* 280 Or 513, 571 P2d 907 (1977). In *Pierson* we gave warning that a single act of conversion of a client's funds by a lawyer would henceforth be sanctioned by disbarment. In *In re Smith,* 292 Or 84, 636 P2d 923 (1981), wherein conversion of an automobile was involved, we did not disbar. In a concurring opinion by Lent, J., 292 Or at 102-03, it was explained that in *Pierson* we meant to lay down a rule for conversion without any colorable claim of right, and we did not mean in *Pierson* to say that an innocent converter would be disbarred.

In *Thomas* we disbarred the accused lawyer for misconduct very much the same as that of the accused in the matter at bar.

We are aware of no reason that this accused should not receive the same sanction. We have examined this accused's misconduct under the Standards and are satisfied that disbarment would be the result thereunder. *See* Standards, 4.11.[10]

We order that the accused be disbarred. The Oregon State Bar is awarded judgment against the accused, Hal F. Coe, for the Bar's actual and necessary costs and disbursements incurred. ORS 9.536(4).

---

[10] Standards for Imposing Lawyer Sanctions, 4.11, provides:

"Disbarment is generally appropriate when the lawyer knowingly converts client property and causes injury or potential injury to a client."