**STATE of Maine**

v.

**James S. HORTON.**

Supreme Judicial Court of Maine.

Argued June 7, 1989.
Decided July 12, 1989.

James E. Tierney, Atty. Gen., Leanne Robbin, Asst. Atty. Gen., James T. Kilbreth (orally), Deputy Atty. Gen., Augusta, for the State.

Daniel G. Lilley, Laurie West, Mary Maloney (orally), Portland, for defendant.

Before McKUSICK, C.J., and WATHEN, GLASSMAN, CLIFFORD, HORNBY and COLLINS, JJ.

McKUSICK, Chief Justice.

Defendant James S. Horton, a laywer, was indicted on April 4, 1988, on one count of theft by unauthorized taking, 17–A M.R.S.A. § 353 (1983), for the alleged misappropriation of $10,000 left with him by a client, the late Muriel Hall. The Superior Court (Penobscot County, *Brody, C.J.*) granted defendant's motion to suppress statements made by him during an inquiry by the Board of Overseers of the Bar relating to the same alleged misappropriation. The question presented on the State's appeal from the suppression order is whether the statements Horton made to the Board during its disciplinary proceedings were compelled, so that use of those statements in this criminal prosecution would violate the guarantees against self-incrimination contained in both the United States and Maine Constitutions. U.S. Const. amends. V, XIV; Me. Const. art. I, § 6. Because we conclude that the suppression justice erred as a matter of law in finding that Horton was compelled to make those statements, we vacate the suppression order.

In 1983 the Board received a complaint alleging that Horton had misappropriated $10,000 that Mrs. Hall had entrusted to him for investment.[1] Bar Counsel notified Horton of the complaint and requested that he produce all documents relating to the matter. In response to a subpoena, Horton accompanied by counsel spoke to Bar Counsel in March of 1983. Without asserting or even mentioning his privilege against self-incrimination, Horton explained to Bar Counsel what had happened to Mrs. Hall's money. Horton later spoke to an investigator for the Board and still later testified voluntarily at a public hearing held by a panel of the Board's Grievance Commission in February of 1988.[2] At no time did Horton or his counsel discuss with anyone connected with the Board the possibility of his invoking the privilege.

---

1. Mrs. Hall was the step-grandmother of Horton's wife and Horton had drafted her will. Horton, however, characterizes his transaction with Mrs. Hall with regard to the $10,000 as a family matter not involving legal representation.

2. Bar Counsel has filed an information, pursuant to Maine Bar Rule 7(e)(6), recommending that the Supreme Judicial Court discipline Horton for misapplication of funds, but that disciplinary proceeding has been stayed pending resolution of this criminal case. *Board of Overseers of the Bar v. Horton*, No. Bar–88–15 (filed Nov. 2, 1988).

Meanwhile, in 1987 the Attorney General, having received a complaint from one of the beneficiaries under Mrs. Hall's will, initiated a criminal investigation of Horton's conduct. On April 4, 1988, the Penobscot County grand jury indicted Horton for theft. Horton then moved in the Superior Court to suppress all statements he had made to the Board or anyone connected with it, arguing that those statements were involuntary and obtained in violation of the federal and state constitutions. The Superior Court after hearing ordered the statements suppressed, and the State appealed pursuant to 15 M.R.S.A. § 2115–A (1980 & Supp.1988) and M.R.Crim.P. 37B.

At issue in this appeal is the suppression justice's interpretation of Maine Bar Rule 2(c). That rule provides, in relevant part:

> The failure without good cause to comply with any rule, regulation or order of the Board or the Grievance Commission or to respond to any inquiry by the Board, the Grievance Commission or Bar Counsel shall constitute misconduct and shall be grounds for appropriate discipline.

The suppression justice concluded that Rule 2(c) forces lawyers to make statements to the Board at the risk of disciplinary sanctions including even disbarment, and that the threat of such sanctions has the effect of depriving lawyers of the freedom to invoke their constitutional privilege against self-incrimination. Concluding that Horton's statements made in these circumstances were involuntary, the justice ruled that using those statements in this criminal prosecution would be unconstitutional.

The suppression justice's conclusion, however, is based on a flawed premise: that Rule 2(c) forces a lawyer receiving an inquiry from the Board to make statements or suffer disciplinary sanction. It is a fundamental principle of statutory construction that when we can reasonably interpret the words of a statute to uphold its constitutionality, we will do so. *See Bossie v. State*, 488 A.2d 477, 479 (Me.1985). Under Rule 2(c) a lawyer is subject to discipline if he fails "without good cause" to "respond" to a Board inquiry. Giving those words their plain and ordinary meaning, we conclude that if a lawyer invokes his privilege against self-incrimination, communication to the Board of that decision constitutes itself a response to the Board's inquiry and he has not failed to respond within the meaning of Rule 2(c).[3] Alternatively, even if one were to treat the invocation of the privilege as a failure to respond, that failure is for "good cause" within the meaning of Rule 2(c). If a lawyer chooses to invoke his constitutional privilege because he fears that his answers might incriminate him, the reason for his choice to remain silent constitutes the kind of "good cause" that excuses any other response to the Board's inquiry.

An interpretation of Rule 2(c) that allowed sanctions to be imposed on a lawyer for invoking the privilege against self-incrimination would be unconstitutional. In *Spevack v. Klein*, 385 U.S. 511, 514, 87 S.Ct. 625, 627, 17 L.Ed.2d 574 (1967), the United States Supreme Court, noting that a citizen may not be penalized for asserting this constitutional right, declared unconstitutional the disbarment of a lawyer for invoking his Fifth Amendment privilege.[4] In a companion case handed down the same day, the Court held that when a New Jersey statute gave police officers under investigation by the state attorney general a choice between answering questions with no grant of immunity or losing their jobs, any statements made were "infected [with] coercion" and not voluntary. *Garrity v. New Jersey*, 385 U.S. 493, 497–98, 87 S.Ct. 616, 618–19, 17 L.Ed.2d 562 (1967). Faced with a choice between self-incrimination and job forfeiture, the Court found, the

---

**3.** That situation should be distinguished from a case such as *Board of Overseers of the Bar v. Sewall*, Bar–88–13 (Oct. 19, 1988) (Hornby, J.), where the court entered default judgment against an attorney who failed in any way to respond to an information or to the Board's motion for default judgment.

**4.** Although *Spevack v. Klein*, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967), is a plurality opinion, the concurrence by Justice Fortas agrees with the plurality that a lawyer cannot be disciplined for asserting his Fifth Amendment privilege. *See id.* at 520, 87 S.Ct. at 630 (Fortas, J., concurring).

officers did not waive their constitutional privilege even though they did not object to use of the statements until their subsequent criminal prosecutions. *See id.* at 496, 499, 87 S.Ct. at 618, 619. *See also Lefkowitz v. Cunningham,* 431 U.S. 801, 805, 97 S.Ct. 2132, 2135, 53 L.Ed.2d 1 (1977) ("State may not impose substantial penalties because a witness elects to exercise his Fifth Amendment right not to give incriminating testimony against himself").

■ Horton has made no showing that either Rule 2(c) or any action by the Board subjected him to pressures such as were present in *Spevack* and *Garrity.* Absent that or any other compulsion, a lawyer who chooses to make statements in the Board proceedings without invoking his privilege to remain silent has done so voluntarily, and there is no constitutional barrier to using those statements in a subsequent criminal prosecution. *See Minnesota v. Murphy,* 465 U.S. 420, 440, 104 S.Ct. 1136, 1149, 79 L.Ed.2d 409, *reh'g denied,* 466 U.S. 945, 104 S.Ct. 1932, 80 L.Ed.2d 477 (1984).

The situation here is unlike that in *Moffett v. City of Portland,* 400 A.2d 340, 342 (Me.1979), where police officers were told that failure to answer questions in an internal police disciplinary proceeding could result in "disciplinary action." In the face of such a threat, we found that the officers were deprived of their free choice in deciding whether to speak or remain silent. *See id.* at 344 (applying *Garrity v. New Jersey,* 385 U.S. 493, 87 S.Ct. 616, and *Lefkowitz v. Cunningham,* 431 U.S. 801, 97 S.Ct. 2132). But neither the actions of the Board nor the terms of Rule 2(c) compelled Horton to answer questions at the risk of disciplinary action. The circumstances of the case at bar are closer to those of *United States v. Indorato,* 628 F.2d 711, 716–17 (1st Cir.), *cert. denied,* 449 U.S. 1016, 101 S.Ct. 578, 66 L.Ed.2d 476 (1980), in which the First Circuit held that a police officer's statements in response to questioning by his superiors were not coerced when he failed to assert the privilege, he was not told he would be dismissed if he failed to answer, he was not asked to waive any immunity,

and no statute required his dismissal for refusing to answer. The court there noted:

> In all of the cases flowing from *Garrity,* there are two common features: (1) the person being investigated is explicitly told that failure to waive his constitutional right against self-incrimination will result in his discharge from public employment (or a similarly severe sanction imposed in the case of private citizens); and (2) there is a statute or municipal ordinance mandating such procedure. In this case, there was no explicit "or else" choice and no statutorily mandated firing is involved. We do not think that the subjective fears of defendant as to what might happen if he refused to answer his superior officers are sufficient to bring him within *Garrity's* cloak of protection.

*Id.* at 716 (footnote omitted).

■ Contrary to Horton's contention, the fact that a lawyer's decision to invoke the privilege and remain silent can be used as evidence in the disciplinary proceeding does not render the lawyer's decision to speak involuntary. Disciplinary proceedings are civil in nature, and a lawyer has no constitutional right to prevent the factfinder in that proceeding from considering the implications of his silence, along with other evidence against him, in making a determination. *See Baxter v. Palmigiano,* 425 U.S. 308, 318, 96 S.Ct. 1551, 1557, 47 L.Ed.2d 810 (1976); *Board of Overseers of the Bar v. Dineen,* 481 A.2d 499, 503 (Me.1984). If he chooses to invoke his Fifth Amendment privilege and remain silent, a lawyer might be disciplined for the underlying misconduct charged by the Board, but that does not mean he is compelled to speak rather than assert his privilege. *See Arthurs v. Stern,* 560 F.2d 477, 478–79 (1st Cir.1977) (there is nothing "inherently repugnant to due process in requiring the doctor to choose between giving testimony at the disciplinary hearing, a course that may help the criminal prosecutors, and keeping silent, a course that may lead to the loss of his license"), *cert. denied,* 434 U.S. 1034, 98 S.Ct. 768, 54 L.Ed.2d 782 (1978).

In this case Horton, appearing before representatives of the Board, chose to tell

his story. A lawyer himself, Horton was also represented by counsel at his first meeting with Bar Counsel. At no time did he bring up the possibility of claiming his privilege against self-incrimination even though he was charged with misappropriation of funds, a charge he knew or should have known could lead to criminal prosecution. Whatever Horton's subjective interpretation of Rule 2(c) may have been, nothing in that rule would allow disciplinary sanctions to be imposed on a lawyer for invoking his constitutional right to remain silent. In these circumstances Horton's election to tell his story to the Board was a voluntary one, and his statements should not be suppressed in this criminal prosecution.

The entry is:

Order of the Superior Court granting defendant's motion to suppress vacated. Remanded for entry of order denying the motion to suppress.

All concurring.