**STATE OF OKLAHOMA, ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Don E. GASAWAY, Respondent.**

No. OBAD 1033.
No. SCBD 3776.

Supreme Court of Oklahoma.

Oct. 19, 1993.

See also 863 P.2d 1189.

**1192**

John E. Douglas, Asst. Gen. Counsel, Oklahoma Bar Ass'n, Oklahoma City, for complainant.

Robert G. Green, Tulsa, for respondent.

SUMMERS, Justice.

The Bar Association petitions us to disbar an attorney who claims he is beyond the reach of discipline by reason of his unsuccessful effort at resignation. We conclude that Respondent stands subject to discipline, and disbar him from the practice of law.

The Professional Responsibility Tribunal filed its report recommending disbarment. The Bar Association has filed its brief. The Respondent was granted two extensions of time to file his brief, but has not filed any brief or response. He has not challenged the trial panel's report.

██ This Court exercises original and exclusive jurisdiction in all matters involving the discipline of persons licensed to practice law. *State ex rel. Oklahoma Bar Association v. Perkins,* 827 P.2d 168, 169 (Okla.1992). In the exercise of this jurisdiction we examine the record of the disciplinary proceeding and the merits of the

disciplinary charges against a Respondent even though he or she fails to file a brief. *State ex rel. Oklahoma Bar Association v. Phillips,* 786 P.2d 1242 (Okla.1990); *State ex rel. Oklahoma Bar Association v. McCurtain,* 767 P.2d 427 (Okla.1989); *In re Cargill,* 164 Okla. 265, 23 P.2d 693 (1933). An adjudication of the merits of a disciplinary claim against a lawyer necessarily includes an examination of affirmative defenses raised by that lawyer during the course of the disciplinary proceeding.

The Respondent challenges the authority of the trial panel to proceed. His challenge is based upon a pending criminal charge against him that involved acts related to those put in issue by the Bar Association. He claims that his resignation from the Bar Association made void these disciplinary proceedings against him, even though his resignation had been refused by this Court. He also claims that a Disciplinary Rule of the Bar Association may not be applied to him without violating his rights granted by the Fifth Amendment. Finally, he claims that subpoenas issued to examine his business and trust accounts should have been quashed and evidence obtained thereunder not considered.

## I. RESPONDENT'S ATTEMPT TO RESIGN

██ The Bar Association originally alleged that Respondent committed ten counts of professional misconduct. He filed no answer to the complaint as required by Rule 6.4.[1] The Bar prepared a proposed resignation from the Bar for his use. He declined to use the form provided by the Bar, and filed a "Resignation in Lieu of Answer" on October 22, 1991. The Bar Association objected to the resignation as submitted by the Respondent.

The procedure for resigning from the Bar is not complicated, and this Court has

---

1. Rule 6.4 of the Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A states:
 The respondent shall within twenty (20) days after the mailing of the complaint file an answer with the Chief Justice. The respondent may not challenge the complaint by de-

murrer or motion. In the event the respondent Fails to answer, the charges shall be deemed admitted, except that evidence shall be submitted for the purpose of determining the discipline to be imposed.

accepted numerous resignations pending disciplinary proceedings. A resignation from the Bar Association by a lawyer who is the subject of an investigation into, or a pending proceeding involving, allegations of professional misconduct is governed by Rule 8.1 of the Rules Governing Disciplinary Proceedings,[2] and this Court has refused to accept a resignation pending disciplinary proceedings that does not comply with Rule 8.1. See *State ex rel. Oklahoma Bar Association v. Perkins*, 757 P.2d 825, 828 (Okla.1988), where we rejected a resignation stating a future effective date as contrary to Rule 8.1. In this case we declined to accept Respondent's resignation because it failed to specify with particularity the nature of the pending grievances, investigations, and other pending proceedings as required by Rule 8.1.[3]

■ The Respondent has alleged that his resignation showed substantial compliance with Rule 8.1, and that literal compliance with the Rule was not necessary. His argument on the resignation was limited to the claim that the reason for requiring a recitation of the pending proceedings, grievances, and investigations served no purpose except for later reinstatement proceedings, and was an insufficient reason to refuse the resignation.[4] Later at the trial panel hearing his counsel argued that the resignation "was proper and improperly rejected by the Supreme Court", and also that "Mr. Gasaway has resigned from this voluntary association ... [and] To require anything more would be unconstitutional."[5]

■ One often cited rule is that an individual may resign from an association as he or she sees fit, subject to financial obligations owing the association, where there are no rules or bylaws restricting the right to resign.[6] Where an association has bylaws and rules they constitute a contract between the members, and membership is regulated by the terms of the contract. *Oklahoma Association of Insurance*

---

2. Rule 8.1, 5 O.S.1991, Ch. 1, App. 1–A states:
 A lawyer who is the subject of an investigation into, or a pending proceeding involving, allegations of misconduct may resign membership in the Oklahoma Bar Association, and thereby Relinquish the right to practice law, only by delivering to the Commission an affidavit stating that the lawyer desires to resign and that:
 (a) The resignation is freely and voluntarily rendered, the lawyer is not being subjected to coercion or duress, and the lawyer is fully aware of the consequences of submitting the resignation;
 (b) The lawyer is aware that there is presently pending an investigation into, or proceedings involving, allegations that there exist grounds for discipline, *specifying particularly the misconduct alleged;*
 (c) The lawyer agrees that he may be reinstated only upon full compliance with the conditions procedures prescribed by these Rules, and no application for reinstatement may be filed prior to the lapse of five years from the effective date of the resignation. (Emphasis added).

3. This part of the Rule is consistent with the authority that in a disciplinary proceeding the court wants the entire record of an attorney's professional conduct before the court. *State ex rel. Oklahoma Bar Association v. Warzyn*, 624 P.2d 1068, 1071 (Okla.1981); *State ex rel. Oklahoma Bar Association v. Moss*, 794 P.2d 403 (Okla.1990).

4. His petition for rehearing also raised, for the first time, an objection to subpoenas issued by the Professional Responsibility Commission. The Court's Order of April 7, 1992 denying rehearing noted that the Professional Responsibility Commission had denied his motion to quash the subpoenas and stated that the Court's Order on rehearing was without prejudice to the respondent presenting his objections on the subpoenas to the Professional Responsibility Tribunal.

5. Although the respondent presents the issue as one involving membership in an association, this characterization is imprecise. A member of the Bar is also a licensee and thereby subject to the regulations pertaining to that license to practice law. *State ex rel. Oklahoma Bar Association v. Lobaugh*, 781 P.2d 806, 809–810 (Okla. 1988); *State ex rel. Oklahoma Bar Association v. Colston*, 777 P.2d 920, 925 (Okla.1989); *State ex rel. Oklahoma Bar Association v. Downing*, 804 P.2d 1120, 1122–1123 (Okla.1990).

6. *National Labor Relations Board v. Granite State Joint Board*, 409 U.S. 213, 216, 93 S.Ct. 385, 387, 34 L.Ed.2d 422 (1972); *Booster Lodge No. 405 v. National Labor Relations Board*, 412 U.S. 84, 88, 93 S.Ct. 1961, 1964, 36 L.Ed.2d 764 (1973); *Borgraefe v. Supreme Lodge, K.L.H.*, 26 Mo.App. 218 (1887).

*Agents v. Hudson,* 385 P.2d 453, 455, 456 (Okla.1963). Thus, rules of an association governing resignation may be enforced against the member.[7] However, the rules of an association may not unconstitutionally preclude a resignation. *Guinn v. Church of Christ of Collinsville,* 775 P.2d 766, 776 (Okla.1989). Similarly, rules governing a resignation of a person from a non-religious association may not be enforced in an arbitrary or capricious manner. *Haynes v. Annandale Golf Club,* 4 Cal.2d 28, 47 P.2d 470, 471 (1935).

In the context of a resignation from a Bar Association some courts have held that accepting a lawyer's resignation is within the discretion of the court when the lawyer is subject to discipline at the time of the resignation.[8] This view of a court's discretion is consistent with our Rule 8.2 governing resignations and providing that "the Supreme Court *may* enter an order approving the resignation pending disciplinary proceedings."[9] In the exercise of this discretion some courts have rejected a resignation even when the resignation was equivalent to disbarment.[10] Courts have also rejected a resignation when it did not comply with a rule of the association requiring a list or acknowledgment of the pending charges of misconduct.[11] Our refusal of the Respondent's resignation on this ground is consistent with authority involving associations generally and for Bar membership as well.

When a lawyer resigns from the Bar under a cloud of allegations of professional misconduct this Court requires the lawyer to set forth with particularity the allegations against the lawyer and any pending Bar investigations. This requirement results in the creation of a formal record in this Court that includes all pending disciplinary matters and investigations. Rule 5.7 of the Disciplinary Rules[12] states that

---

7. *Braddom v. Three Point Coal Corporation,* 288 Ky. 734, 157 S.W.2d 349, 352 (1941); *Progressive Grocers' Ass'n. Inc. v. Golden,* 76 U.S.App.D.C. 21, 128 F.2d 318, 319 (1942); *Associated Hat Manufacturers v. Baird–Unteidt Co.,* 88 Conn. 332, 91 A. 373, 378 (1914).

8. *In re Coe,* 302 Or. 553, 731 P.2d 1028, 1032–1033 (1987); *Matter of Reed,* Del.Supr., 429 A.2d 987, 994 (1981); *Application of Harper,* 84 So.2d 700, 707 (Fla.1956). *See also Matter of Discipline of Peck,* 302 N.W.2d 356, 359 n. 3 (Minn. 1981), (court may impose conditions upon acceptance of resignation); *The Florida Bar v. Summers,* 197 So.2d 291, 292 (Fla.1967), (court may impose appropriate conditions for resignation according to rule governing resignation). *Cf. In re Lewis,* 404 S.W.2d 469 (1966), (court declined to accept resignation and disbarred attorney); *Louisiana State Bar Association v. Pitcher,* 238 La. 649, 116 So.2d 281 (1959), (same); *Louisiana State Bar Association v. Cohen,* 242 La. 838, 138 So.2d 594 (1962), (same); *Matter of Duffy,* 102 N.M. 524, 697 P.2d 943, 945 (1985), (resignation not approved due to egregious violations of Code of Professional Responsibility and attorney disbarred); *In re King,* 165 Or. 103, 105 P.2d 870, 874 (1940), (resignation without consent of the court is ineffectual to preclude disbarment when proceedings therefor were pending at time of resignation).

9. Rule 8.2, 5 O.S.1991, Ch. 1, App. 1–A, as amended effective Jan. 12, 1989, (emphasis added). The Rule states:

 Upon receipt of the required affidavit, the Commission shall file it with the Clerk of the Supreme Court and the Supreme Court may enter an order approving the resignation pending disciplinary proceedings. A lawyer who so resigns shall only be permitted to apply for reinstatement after the lapse of five (5) years and under the provisions of Rule 11.

10. *In re Johnson,* 49 N.J. 110, 228 A.2d 343, 344 (1967); *Matter of Ditri,* 71 N.J. 173, 364 A.2d 545 (1976). *Cf. Office of Disciplinary Counsel v. Herrman,* 475 Pa. 560, 381 A.2d 138 (1977), (resignation with stipulation to never reapply for membership was refused by court and lawyer disbarred); *Disciplinary Proceedings Against Snyder,* 127 Wis.2d 446, 380 N.W.2d 367, 369 (1986), (proffered resignation with stipulation of permanent retirement from the practice of law rejected by court and license to practice law revoked); *State ex rel. Florida Bar v. Englander,* 118 So.2d 625, 626 (1960), (court determined that due to the lawyer's flagrant misconduct the acceptance of a resignation would adversely affect the purity of the courts, the resignation was rejected, and lawyer disbarred).

11. *Matter of Sands,* 86 App.Div.2d 96, 449 N.Y.S.2d 219, 220 (1982); *Matter of Sands,* 89 App.Div.2d 61, 454 N.Y.S.2d 715 (1982); *Office of Disciplinary Counsel v. Herrman,* 475 Pa. 560, 381 A.2d 138 (1977); *Matter of Nixon,* 53 A.D.2d 178, 385 N.Y.S.2d 305, 307–308 (1976).

12. Rule 5.7, 5 O.S.1991, Ch. 1, App. 1–A *states:*

 Investigations by the General Counsel and the Commission shall be confidential, and the results thereof shall not be made public until authorized by the Supreme Court or as pro-

investigations and grievances are confidential and are not made public unless authorized by the Supreme Court or under Rule 6.1, which sets forth the procedure for filing a formal complaint. Thus, the resignation not only memorializes the public matters in the formal complaint but also brings previously confidential matters before the Court and the public. It should be noted that Rule 8.1 in no way requires an attorney to make any admissions of culpability, but merely to state, with some particularity, the allegations presently pending against him.

■ The Respondent's tendered resignation and the original complaint were filed simultaneously on a docket of this Court and made part of a public record. The resignation stated that the Bar Association was investigating other grievances against the Respondent, but did not indicate the nature of those grievances. Thus, the Respondent requested that a resignation pending discipline be approved when there was no record before the Court on those pending grievances and investigations. The complaint was later amended to add an additional eleven counts of alleged misconduct. The purposes of accepting a resignation during discipline do *not* include keeping allegations of unprofessional conduct from the Court or secreting the allegations from the public eye. The Respondent's resignation pending discipline was facially improper because it did not comply with the Association rule requiring a list or acknowledgment of the pending disciplinary charges and investigations.[13] This requirement serves important interests for the benefit of the resigning lawyer, the Bar Association, and the public.

## II. RESPONDENT'S MOTION TO CONTINUE OR STAY THE PROCEEDINGS

A hearing was held before the trial panel on July 1, 1992. Respondent was present with counsel, and asserted that he was making a "special appearance" at the hearing. Before any evidence was presented or witnesses called the Respondent presented three motions, two for a continuance and one to quash subpoenas issued by the Professional Responsibility Commission. The Bar Association also made a motion to have the allegations against Respondent deemed admitted because of the Respondent's failure to answer the allegations.

■ Respondent's first motion was for a continuance based upon the argument that one of the three trial panel members was not available for the hearing, and the panel lacked "jurisdiction" to proceed. A trial panel is composed of three members called "Masters", and "Two of the three Masters shall constitute a quorum for the purposes of conducting hearings, ruling on and receiving evidence, and rendering Findings of Fact and Conclusions of Law." Rule 6.6, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A. A trial panel possesses the discretion to continue a date for a hearing when good cause is shown. *Id.* at Rule 6.7. The trial panel did not abuse its discretion when it denied this motion for a continuance.

■ The second motion for continuance was based upon the statement made by Respondent's counsel that a week prior to the hearing: "... a criminal case or two cases were filed against Mr. Gasaway,

vided by Rule 6.1. However, when no formal complaint is filed in the Supreme Court, at the option of the respondent, the final disposition of a grievance by the Professional Responsibility Commission may be made public. In all cases the person who filed a grievance and the respondent shall be notified of the final disposition thereof.

**13.** We note that Rules 8.1 and 8.2 do not prohibit a lawyer from submitting a second resignation that conforms to the Rules. A result allowed by another court as well. *See Matter of Sands,* 86 App.Div.2d 96, 449 N.Y.S.2d 219, 220

(1982); *Matter of Sands,* 89 App.Div.2d 61, 454 N.Y.S.2d 715 (1982). The respondent was informed by the Court that his resignation did not comply with Rule 8.1 and he elected to stand on a deficient resignation instead of submitting a second proper resignation. We also note that respondent's tendered resignation was improper as it did not agree to pay the costs of the proceeding. This Court has routinely required a lawyer resigning during disciplinary proceedings to pay the reasonable costs of the investigation incurred prior to the resignation.

which it is my understanding, and I've not looked at the information, that the allegations in those counts in those criminal cases concern the same matters that may be contained in the complaint filed by the Bar Association." He argued that he could not be compelled to give evidence against himself, and that the Complaint sought to impose discipline because he refused to give evidence against himself. Counsel later explained that "Mr. Gasaway, as we've stated earlier under Fifth Amendment Rights, is effectively precluded from testifying in this proceeding because there's a criminal case pending."

The U.S. Supreme Court has stated that simultaneous civil and related criminal proceedings do not constitute "unfairness and want of consideration for justice" so as to require the reversal of a criminal conviction. *United States v. Kordel*, 397 U.S. 1, 11, 90 S.Ct. 763, 769, 25 L.Ed.2d 1 (1970).

> It would stultify enforcement of federal law to require a governmental agency such as the FDA invariably to choose either to forego recommendation of a criminal prosecution once it seeks civil relief, or to defer civil proceedings pending the ultimate outcome of a criminal trial.

*Id.* 397 U.S. at 11, 90 S.Ct. at 769.

This view was also expressed in *Abel v. United States*, 362 U.S. 217, 229–230, 80 S.Ct. 683, 692–693, 4 L.Ed.2d 668 (1960) where the Court explained that the Constitution did not require an irrevocable choice on the part of the Government between

pursuing an I.N.S. investigation and an F.B.I. investigation against an individual.

Consistent with this rule of not requiring the Government to choose between using a civil or criminal proceeding against a defendant, courts have explained that simultaneous civil and criminal proceedings do not necessarily run afoul of the Fifth and Fourteenth Amendments. One state court stated:

> There is nothing inherently repugnant to due process in requiring plaintiff to choose between giving testimony at the disciplinary hearing and keeping silent, even though giving testimony at the hearing may damage his criminal case and keeping silent will most likely lead to loss of his employment.

*Giampa v. Illinois Civil Service Commission*, 89 Ill.App.3d 606, 44 Ill.Dec. 744, 750, 411 N.E.2d 1110, 1116 (1980).

In *United States v. Kordel, supra*, a defendant, as does the Respondent herein, argued for a stay of the civil proceeding because of a pending criminal proceeding. Courts have cited *Kordel* as support for the proposition that the *sole* fact of simultaneous proceedings is insufficient to constitutionally require a stay. For example, in *Oznemoc v. Alcoholic Beverages Cont. Comm.*, 412 Mass. 100, 587 N.E.2d 751 (1992) that court explained that: "Courts generally reject claims by parties to administrative proceedings that they are entitled to continuances until after their criminal trials because they will not testify for fear of self-incrimination." *Id.* 587 N.E.2d 751. Numerous cases from other jurisdictions support this rule.[14]

---

**14.** *See, e.g., Psi Upsilon v. University of Pa.*, 404 Pa.Super. 613, 591 A.2d 755, 760 (1991), (where individuals invoked right against self-incrimination in disciplinary hearing the University did not deny their due process rights when it declined to postpone disciplinary hearing until completion of related criminal charges); *Herberg v. Commonwealth, State Bd. of Medical Ed.*, 65 Pa.Commw. 358, 442 A.2d 411, 413 (1982), (physician not denied due process or rights against self-incrimination where rights invoked in licensure proceeding while related criminal case pending); *U.S. Trust Co. of New York v. Herriott*, 10 Mass.App.Ct. 313, 407 N.E.2d 381, 385 (1980), (no constitutional requirement that civil proceeding must yield to simultaneous criminal proceeding); *Matter of Germaine B.*, 86

A.D.2d 847, 447 N.Y.S.2d 448, 449 (1982), (no violation of constitutional right occurs when a party is required to proceed in a civil proceeding prior to related criminal proceeding); *Rosenberg v. Board of Education of School Dist. No. 1*, 710 P.2d 1095, 1100 n. 11 (Colo.1985), (no right to continuance of administrative proceeding pending the outcome of related criminal proceeding); *Arthurs v. Stern*, 560 F.2d 477 (1st Cir.1977), *cert. denied*, 434 U.S. 1034, 98 S.Ct. 768, 54 L.Ed.2d 782 (1978), (no due process violation by requiring doctor to choose between giving testimony at disciplinary hearing and keeping silent); *Gabrilowitz v. Newman*, 582 F.2d 100, 104 (1st Cir.1978), (no due process violation where student is forced to decide whether to testify at disciplinary hearing, but

■ The rule has also been recognized in the context of lawyer discipline proceedings. For example in *State v. Horton*, 561 A.2d 488 (Me.1989) that court explained:

> Contrary to Horton's contention, the fact that a lawyer's decision to invoke the privilege and remain silent can be used as evidence in the disciplinary proceeding does not render the lawyer's decision to speak involuntary. Disciplinary proceedings are civil in nature, and a lawyer has no constitutional right to prevent the fact finder in that proceeding from considering the implications of his silence, along with other evidence against him, in making a determination. *See Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976); *Board of Overseers of the Bar v. Dineen*, 481 A.2d 499, 503 (Me.1984). If he chooses to invoke his Fifth Amendment privilege and remain silent, a lawyer might be disciplined for the underlying misconduct charged by the Board, but that does not mean he is compelled to speak rather than assert his privilege.

*Id.* 561 A.2d at 491.

Thus, simultaneous Bar disciplinary proceedings and related criminal proceedings do not necessarily require the staying of the disciplinary proceeding.

■ It is true that a court may exercise its discretion and grant a stay when a strong public interest in proceeding expeditiously on a civil case is absent.[15] This policy is reflected in Disciplinary Rule 5.6 allowing the Professional Responsibility Commission to stay the processing of a grievance.[16] The high court has stated circumstances that may call for granting relief from simultaneous proceedings:

> We do not deal here with a case where the Government has brought a civil action solely to obtain evidence for its criminal prosecution or has failed to advise the defendant in its civil proceeding that it contemplates his criminal prosecution; nor with a case where the defendant is without counsel or reasonably fears prejudice from adverse pretrial publicity or other unfair injury; nor with any other special circumstances that might suggest the unconstitutionality or even the impropriety of this criminal prosecution.

*United States v. Kordel*, 397 U.S. at 11–12, 90 S.Ct. at 769–770. None of those circumstances have been alleged or raised by the Respondent in his request for a continuance.

The Respondent was suspended from the practice of law after the trial panel hearing

---

under particular circumstances student should be allowed to consult with a lawyer during the hearing); *United States v. Rubinson*, 543 F.2d 951, 961 (2d Cir.), *cert. denied*, 434 U.S. 850, 97 S.Ct. 139, 50 L.Ed.2d 124 (1976), (Fifth Amendment right against self-incrimination not prejudiced by prior civil S.E.C. proceeding); *Peiffer v. Lebanon School Dist.*, 848 F.2d 44, 46 (3d Cir. 1988), (party was not faced with an unconstitutional choice to testify and he was not constitutionally entitled to a postponement of civil proceeding pending the disposition of criminal charges); *Hoover v. Knight*, 678 F.2d 578, 581 (5th Cir.1982), (parallel civil and criminal trials or investigations do not raise a question of constitutional magnitude); *U.S. v. White*, 589 F.2d 1283, 1286–1287 (5th Cir.1979), (civil trial while criminal charges pending where invocation of the Fifth Amendment would not necessarily result in adverse judgment); *Diebold v. Civil Service Commission of St. Louis County*, 611 F.2d 697, 700–701 (8th Cir.1979), (Fifth Amendment not violated by simultaneous criminal and administrative proceedings). *Cf. S.E.C. v. Tome*, 638 F.Supp. 629, 631–632 (S.D.N.Y.1986), (adverse inference from defendant's silence in civil litigation is constitutional even when related criminal proceeding is pending).

**15.** *United States v. Kordel*, 397 U.S. at 9, 90 S.Ct. at 768; *Arthurs v. Stern*, 560 F.2d at 479–480; *United States v. U.S. Currency*, 626 F.2d 11, 17 (6th Cir.1980). *See also Favaloro v. S/S Golden Gate*, 687 F.Supp. 475, 481–482 (N.D.Cal.1987), (Constitution does not require a stay of civil proceeding until criminal action is no longer possible but court has discretion to grant stay or provide other relief when circumstances warrant granting such); *Brock v. Tolkow*, 109 F.R.D. 116, 118–120 (E.D.N.Y.1985), (same); *Digital Equipment Corp. v. Currie Enterprises*, 142 F.R.D. 8, 11–15 (D.Mass.1991), (same).

**16.** Rule 5.6 states:

> Processing of grievances shall not be deferred or abated because of substantial similarity to the material allegations of pending criminal or civil litigation, or administrative proceedings, unless authorized by the Commission in its discretion, for good cause shown.

and pending the outcome of this proceeding. This circumstance could weigh in favor of this Court granting a requested stay when related criminal charges have been filed and are pending against a lawyer subject to professional discipline. Although disciplinary proceedings may result in the suspension or disbarment of a lawyer this result is not the exclusive purpose of the disciplinary process. Thus, an interim suspension does not, by itself, show that the interests of the Bar Association and public in the disciplinary proceeding have been satisfied so as to *require* a continuance or stay of the disciplinary proceeding. We decline to issue a stay under the circumstances of this case.

### III. THE MOTION TO QUASH THE SUBPOENAS

■ The Respondent also requested the panel to quash the subpoenas issued pertaining to his bank records. The Bar Association asked the Respondent to provide information and documents relating to the financial transactions between himself and clients whom had filed grievances against him. Respondent declined to respond. The Bar again requested the records, and again the Respondent declined to respond.

The subpoenas were issued May 14, 1991, to the First Bank of Catoosa and Community Bank and Trust, and notice of the subpoenas was mailed to Gasaway on the same date. The Respondent mailed his motion to quash to the Professional Responsibility Tribunal on May 22, 1991. During a regularly scheduled meeting of the Commission on May 31, 1991 the motion to quash was denied by the Commission and the Respondent was informed of the denial.

On June 19, 1991 the Bar Association informed Respondent's counsel that the banks would comply with the subpoenas on July 2, 1991 unless the Respondent obtained a judicial order prohibiting the banks

from proceeding. The Bar stated in its notice: "This agreement will allow Mr. Gasaway, if he has a legitimate objection to the subpoena, to raise it." Counsel for the Bar also provided the Respondent a copy of an order where this Court had assumed original jurisdiction to adjudicate a dispute between a lawyer and the Bar Association concerning the scope of a similar subpoena issued by the Professional Responsibility Commission. The Respondent did not seek judicial review, and the banks complied with the subpoenas.

At the hearing before the trial panel the Respondent moved to quash the subpoenas, and objected to the introduction of evidence obtained by the subpoenas. He argued that (1) the subpoenas were overbroad, (2) the Bar had not sought to enforce the subpoenas in a District Court, (3) no hearing was provided on the motion to quash, and (4) that the same entity that issued the subpoenas also adjudicated the motion to quash.

■ In *Nichols v. Council on Judicial Complaints,* 615 P.2d 280 (Okla.1980) we stated that a subpoena duces tecum may be overbroad in scope and thus an unreasonable search and seizure within the meaning of the Fourth Amendment to the United States Constitution. *Id.* 615 P.2d at 284. A Fourth Amendment claim is founded upon a person's privacy interest in the material sought by the subpoena.[17] However, no Fourth Amendment privacy interest exists with regard to the bank records.[18]

■ The Respondent argued that the subpoenas were "overbroad" in scope under the Oklahoma Financial Privacy Act, 6 O.S.1991 1991 §§ 2201–2206, and that they sought material that is "incompetent, irrelevant, and immaterial for the purposes for

17. *Id.* 615 P.2d at 285. *See also Fisher v. United States,* 425 U.S. 391, 401, 96 S.Ct. 1569, 1576, 48 L.Ed.2d 39 (1976), [citing *Oklahoma Press Pub. Co. v. Walling,* 327 U.S. 186, 208, 66 S.Ct. 494, 505, 90 L.Ed. 614 (1946); *In re Horowitz,* 482 F.2d 72, 75–80 (2d Cir.1973), (Friendly, J.)].

18. *Nichols,* 615 P.2d at 283 n. 11, [citing *United States v. Miller,* 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976) ]. *See also S.E.C. v. Jerry T. O'Brien, Inc.,* 467 U.S. 735, 743, 104 S.Ct. 2720, 2725, 81 L.Ed.2d 615 (1984); *Pleasant v. Lovell,* 974 F.2d 1222, 1229 (10th Cir.1992).

which it is sought." [19] We find otherwise. Administrative subpoenas are to be "sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome." *See v. Seattle,* 387 U.S. 541, 544, 87 S.Ct. 1737, 1739, 18 L.Ed.2d 943 (1967). In *United States v. Powell,* 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–255, 13 L.Ed.2d 112 (1964) the Court examined the relevant statutory authority for the agency issuing the subpoena, and stated that in order to obtain enforcement of a subpoena the agency must have a legitimate purpose for the investigation, the inquiry must be relevant to that purpose, the agency must not possess the information sought, and the agency must have adhered to the administrative procedures.

The subpoenas requested bank records from April 12, 1990 to May 1991. The record before us shows pre-subpoena complaints to the Bar Association involving financial transactions occurring in April and May 1991, April and November 1990, and the status of trust accounts during the period between April and November 1990. The Commission is given the authority to investigate any alleged ground for lawyer discipline. 5 O.S.1991 Ch. 1, App. 1–A, Rule 2.8. The Commission as a part of this investigation may issue subpoenas upon approval of the Commission by the chairman or vice-chairman of the Commission. *Id.* The subpoenas were not overbroad in scope with regard to the complaints. They were relevant to a legitimate inquiry by the Commission in its role of investigating lawyer misconduct.

The Respondent argued that the Oklahoma Financial Privacy Act, 6 O.S.1991 §§ 2201–2206, required quashing the subpoenas. He argued that under the Act the proper authority to hear the motion to quash was the District Court. This assertion is incorrect. Section 2204 of the Act states in part:

> If the subpoena was issued by the district court, the motion to quash the subpoena shall be filed in the district court that issued the subpoena. If the subpoena was issued by a state agency or a legislative committee, the motion to quash the subpoena shall be filed with the state agency or legislative committee that issued the subpoena.

Under the Act the entity that issues the subpoena hears the motion to quash. However, as explained hereafter this provision does not apply to the Commission.

The Respondent also argued that a procedure is unconstitutional when the same entity issues a subpoena and also hears a motion to quash that subpoena. Standard agency practice appears to allow an agency to hear a motion to quash its own subpoena. 1 C. Koch, *Administrative Law and Practice,* § 5.36 (1985). *See e.g.,* 75 O.S.Supp.1992 § 315(B)(2); 6 O.S.1991 § 2204(c). But we need not examine this argument because the controversy before us is a Bar disciplinary proceeding, and the procedures in this proceeding satisfy due process.

■ The Professional Responsibility Commission is a part of the Oklahoma Bar Association and exercises a rule-granted power to consider and investigate alleged grounds for lawyer discipline. 5 O.S.1991, Ch. 1, App. 1–A, Rules 2.1, 2.8(a). The Oklahoma Bar Association was created by this Court, and the Association is an official arm of the Court acting for and on behalf of the Court in lawyer-discipline matters. 5 O.S.1991, Ch. 1, App. 1, Preamble; 5 O.S.1991, Ch. 1, App. 1, Art. 1 § 1. *See also Stamper, Otis & Burrage v. Shaffer,* 813 P.2d 1043 (Okla.1991); *Tweedy v. Oklahoma Bar Association,* 624 P.2d 1049, 1054–1055 (Okla.1981). This Court possesses exclusive and original jurisdiction in disciplinary proceedings. *State ex rel. Oklahoma Bar Association v. Perkins, supra.* This jurisdiction includes authority to adjudicate the propriety of subpoenas issued by the Professional Responsibility Commission to examine lawyer

---

**19.** 6 *O.S.1991* § 2204(c)(i) states that a motion to quash may be filed on the ground: "that the financial record sought is incompetent, irrele- vant, or immaterial for the purpose or purposes for which it is sought;"

bank records for the purpose of a disciplinary proceeding.

The Respondent was provided with time to seek relief in this Court prior to the banks' divulging the information. Counsel for the Bar informed the Respondent of a case where this Court assumed original jurisdiction and adjudicated a similar claim in a similar procedural context, and he was provided a copy of this court's order in that case. The Respondent did not pursue that opportunity for judicial review, and cannot now successfully complain that he was denied an opportunity to be heard via judicial review when such was the result of his own inaction.

The Respondent also argued that the Oklahoma Financial Privacy Act required the Bar Association to enforce the subpoenas in the District Court before the banks complied with the subpoenas, because he filed a motion to quash with the Professional Responsibility Commission. The Respondent relied upon language in 6 O.S. 1991 § 2204 providing that: "A subpoena issued by a state agency or legislative committee shall be enforced pursuant to Section 315 of Title 75 of the Oklahoma Statutes." Section 315 is part of the Administrative Procedures Act (75 O.S.1991 §§ 250–323), and provides a procedure for enforcing agency subpoenas in the District Court of the county where the recalcitrant witness resides.

The Oklahoma Supreme Court is not an "agency" for the purpose of the Oklahoma Administrative Procedures Act. 75 O.S. 1991 § 250.3, nor is the Bar Association, as an arm of this court, such an agency for the purpose of that Act. This Court is amply empowered to enforce a subpoena issued in the course of Bar disciplinary proceeding. The Rules Governing Disciplinary Proceedings provide an enforcement procedure in the *Supreme Court* with the Chief Justice assigning a judge of the district court to try a contemptuous refusal to comply with a Commission subpoena. 5 O.S.1991, Ch. 1, App. 1–A, Rule 2.8.

Respondent argued that the motion to quash should be sustained by the trial panel because he received no hearing on his motion to quash before the Professional Responsibility Commission, and argued that "Failure to have a hearing is a denial of the minimum standards of due process." Not so, as we explained in *Mott v. Carlson*, 786 P.2d 1247, 1251 (Okla.1990) and *State ex rel. Oklahoma Bar Association v. Hornung*, 813 P.2d 1041, 1042 (Okla.1991). Prior to the information being released in compliance with the subpoenas, the Respondent was afforded an opportunity to seek original-jurisdiction relief in this court, and present any legal arguments and facts he desired in support of quashing the subpoenas. The availability of this procedure satisfied due process. *Mott v. Carlson, supra.* Additionally, the Respondent was provided with an opportunity to make any legal arguments he desired by his motion to quash before the Commission, and he took that opportunity. Later when the Respondent was making his arguments before the trial panel he did not allege or argue that a material fact was in dispute on one of the grounds urged to quash, or that a hearing to adjudicate a fact had been necessary before the Commission or later before the trial panel. *See State ex rel. Oklahoma Bar Association v. Hornung, supra.* We also note that in the exercise of this court's exclusive and original jurisdiction we have addressed the substance of the Respondent's claims on the motion to quash. The Respondent did not avail himself of his opportunity to present facts to the trial panel on the motion to quash or submit legal arguments by brief in this court after the panel report was filed. The Respondent was not denied procedural due process. *Mott v. Carlson, supra, State ex rel. Oklahoma Bar Association v. Hornung, supra.*

The Respondent also argued that the trust account records necessarily included information concerning clients other than those filing grievances, and the trust account records were not subject to subpoena because "lawyers are required to keep confidential the affairs of their clients." The Rules Governing Disciplinary Proceedings and the Rules of Professional Conduct re-

quire a lawyer to maintain a trust account for the deposit of clients' funds entrusted to the lawyer. 5 O.S.Supp.1992 Ch. 1, App. 1–A, Rule 1.4 and 5 O.S.1991 Ch. 1, App. 3–A, Rule 1.15. A lawyer is required to maintain the records during representation of the client and continuing until five years after the termination of the representation. Rule 1.15.

■ The mandated record-keeping is part of a State regulatory scheme for those licensed to practice law, and the regulation serves important public purposes in the administration of justice and the protection of the property of the citizens of the State. The regulatory nature of a Bar Association over these accounts for the purpose of lawyer discipline has been recognized when courts have determined that no Fifth Amendment self-incrimination privilege could be invoked by a lawyer with respect to the records of such accounts. *Louisiana State Bar Association v. Chatelain,* 513 So.2d 1178,1181 (La.1987). *Cf. Baltimore City Dept. of Social Serv. v. Bouknight,* 493 U.S. 549, 556, 110 S.Ct. 900, 905, 107 L.Ed.2d 992 (1990), (the Court recognized that the Fifth Amendment could not be invoked to resist compliance with a regulatory scheme unrelated to the enforcement of criminal laws). We hold that when the Commission is acting in an investigation relating to a lawyer's rule-mandated trust account, and issues a subpoena to examine the trust account, the lawyer may not resist the subpoena *solely* on the ground that the record may reveal information concerning the lawyer's clients.

## IV. THE BAR ASSOCIATION'S MOTION TO DEEM ITS ALLEGATIONS ADMITTED

The Bar Association filed a motion to have the allegations against the Respondent deemed admitted pursuant to Rule 6.4, because he did not answer the formal Complaints.[20] The trial panel granted the motion. Granting the motion was erroneous, and we disregard the trial panel's action on

20. See Rule 6.4 at note 1 *supra.*

the motion in the course of our *de novo* review of the proceeding.

In *State v. Horton,* 561 A.2d 488 (Me. 1989), the Supreme Judicial Court of Maine explained that in *Spevack v. Klein,* 385 U.S. 511, 514, 87 S.Ct. 625, 627, 17 L.Ed.2d 574 (1967) the plurality opinion and the separate concurring opinion by Justice Fortas agreed that a lawyer could not be disciplined for asserting a Fifth Amendment privilege against self-incrimination. *Id.* 561 A.2d at 490. This view is consistent with *Lefkowitz v. Cunningham,* 431 U.S. 801, 805, 97 S.Ct. 2132, 2135, 53 L.Ed.2d 1 (1977), where the Court stated that "a State may not impose substantial penalties because a witness elects to exercise his Fifth Amendment right not to give incriminating testimony against himself."

■ When a lawyer is called upon to answer allegations in a grievance that lawyer may refuse to answer upon "expressed constitutional grounds." Rule 5.2. Similarly, Rule 6.11(d) expressly provides for a Respondent to invoke a right against self-incrimination in the trial panel proceeding. *State ex rel. Oklahoma Bar Association v. Moss,* 794 P.2d 403, 408–410 (Okla.1990). The construction placed upon the Rule by the Bar amounts to a finding of "guilty" by a Respondent's mere invocation of the Fifth Amendment. We decline to construe the Rule in this manner. When a lawyer timely invokes the Fifth Amendment in response to a formal Bar Complaint we will not deem the Bar's allegations admitted.

■ The Rules require a Respondent to either answer a grievance (Rule 5.2), or testify (Rule 6.11), or expressly state a reliance upon a constitutional ground for not complying with the Rules. The Respondent did not answer the allegations in the grievances nor did he state that he was relying upon the Fifth Amendment or any other constitutional ground as a reason for not answering. Rule 5.2 provides a respondent with a fair opportunity to rely upon the Fifth Amendment and state such reliance in an answer to the Bar Association. Respondent's assertion of the Fifth Amend-

ment at the trial panel hearing was sufficient to invoke the protection of that right in the context of the trial panel proceeding,[21] and was sufficient to prevent the Tribunal from deeming the Bar's complaints admitted.

After making his legal arguments before the Tribunal, Respondent and his counsel sought leave to withdraw from further participation in the proceedings. The presiding Master granted their request, and evidence was received on the merits of the complaints in the Respondent's absence. Counsel for the Bar presented the following evidence and then rested.

## V. THE EVIDENCE

### A.

The Respondent received a check in the amount of $38,767.65 for the sale of his client's property during a divorce. The check was deposited into his trust account in December 1990. In May of 1991 opposing counsel in the divorce case requested that the Respondent deposit the $38,767.65 with the Court Clerk, and an order of the District Court was made to that effect. The Respondent did not deposit the amount within the time afforded by the order, and opposing counsel filed a motion to compel the Respondent to deposit the funds with the Court Clerk.

While the divorce case was on appeal a settlement occurred, with the opposing counsel's client receiving a cashier's check in the amount of $8,657.63, and the balance of $30,110.02 was paid to the Respondent's client by a check drawn on the First State Bank of Catoosa. The check was dated May 6, 1991 but not delivered to the client until June 6, 1991. The record shows that this account had a balance of $757.15 on May 7, 1991. The Respondent told his client that the check would be good on June 10, 1991. On June 7, 1991 the bank declined to pay on the check due to insufficient funds. The bank also declined to cash the check on June 10 and 11, 1991, for

the same reason. The Respondent's client hired another lawyer to get the Respondent to pay the $30,110.02. One day after Respondent discussed the matter with this lawyer the client received from the Respondent a cashier's check drawn on the First State Bank of Catoosa for $30,110.02.

One of the exhibits is a statement from the Respondent's trust account for the month of December 1990. The exhibit shows the $38,767.65 deposit on December 11, 1990. The exhibit shows a balance for the account on December 31, 1990 in the amount of $19.96. None of the disbursements went to the parties in the divorce proceeding, nor were they made with the approval of the parties to the divorce.

The exhibits show on that on the same day the $38,765.62 was deposited an amount of $35,000 was moved from the trust account to a different special trust account in the same bank. The $35,000 was disbursed and included $6,000 in cash for a District Court suit where the Respondent was a defendant, and a $750 check to the Court Clerk for the same case. By December 20, 1990 this trust account had a negative balance of $51.74. None of the disbursements from this special trust account were for the benefit of the Respondent's client.

The testimony shows that the divorce proceeding was concluded in February of 1991. Approximately one week thereafter the Respondent's client informed him that she did not want to appeal and wanted the $38,765.62 disbursed. While waiting for her money she attempted three times to purchase a house, but could not do so because her anticipated funds were not timely remitted to her from the Respondent.

### B.

A Texas law firm sent a check to Gasaway, and the check was made payable to Gasaway and Paul Polin in the amount of $25,147.29. The check was deposited to Respondent's trust account at the First

---

21. In *State ex rel. Oklahoma Bar Association v. Moss*, 794 P.2d 'at 408–409, we explained that a respondent's written response to a grievance did not waive the protection of the Fifth Amendment at a subsequent trial panel proceeding.

Bank of Catoosa. Checks were written by Gasaway against the deposited check and the account was depleted to a minimum balance.

The check was drawn on a Texas bank. The Texas bank returned the check to the Catoosa bank because of an improper endorsement. The bank contacted Polin to endorse the check. Polin declined to endorse the check unless he received "his share" of the check. The bank contacted Gasaway and was informed that Gasaway and Polin were in the process of negotiating how much of the check belonged to Polin. The bank loaned Gasaway the money to cover the check. The bank was not repaid for this loan, and "charged the loan off."

### C.

American Credit Indemnity (ACI) retained the Respondent to collect debts owed to ACI on different accounts. The Respondent sent a check to ACI in the amount of $22,942.67 for one account. The check was returned for insufficient funds. The check was again deposited and again returned for insufficient funds. After the check bounced the Respondent sent ACI a partial payment in the amount of $12,000 by a cashier's check. He then sent ACI a check in the amount of $11,500, but it also was returned for insufficient funds. When the Respondent did not remit the additional $10,942.70 a bonding company paid the deficit to ACI.

### D.

On another account the Respondent received approximately sixty checks from the debtor, with each check in the amount of $400. The Respondent and ACI had an agreement under which he was authorized to deduct $52 as his fee from each $400 check he collected. The Respondent sent ACI twenty-one checks for $348. According to the Complaint the Respondent failed to remit $13,572 to ACI under the agreement. The testimony from a representative of ACI was that the Respondent owed ACI $12,400. The witness testified that the discrepancy could not be reconciled by ACI at the time of the hearing, but because the fee was based upon a percentage the discrepancy was probably due to giving the Respondent credit for attorney fees on amounts collected on the account by another attorney prior to the Respondent's involvement. ACI did not receive the $12,400 from the Respondent and suffered a loss in that amount.

### E.

A lawyer was employed by Gasaway as an associate, and the associate settled a case for a client. The associate received a check in the amount of $6,500. On April 12, 1990 the settlement check was deposited into Gasaway's trust account as he maintained the firm account and signed the trust account checks. The client received a check dated April 19, 1990 for $2,063.34 and the check was returned for insufficient funds. The client received her share of the proceeds one week thereafter. The client's medical bills went unpaid.

The record shows that on April 17, 1990 the account had a negative balance by as much as $1,493.75 and then on April 19, 1990 the trust account had a positive balance of $33.75. No funds had been paid to the client or her medical providers prior to April 19, 1990. The record shows that one medical provider was paid $465.00 in November 1990 and two other medical bills were paid with undated checks that were negotiated in March of 1991, one for $350.00 and one for $1,245.00.

The client filed a grievance against the associate lawyer with the Tulsa County Bar Association. The associate was mailed a request to respond to the grievance. The associate was not aware of the grievance and the request because the Respondent opened the mail and did not forward the grievance and request to his employee. The Respondent responded to the Tulsa County grievance without informing the associate. The Oklahoma Bar Association began investigating the same matter against the associate. The associate lawyer still did not know of the grievance until contact-

ed by the Bar Association with a telephone call.

### F.

Hudson & Keys retained the Respondent to collect an account from a credit union loan. The debtor, Willoughby, made an arrangement to make a payment to Gasaway to pay off the account. He paid Gasaway with a cashier's check in the amount of $2,334.10 and the check was deposited in Gasaway's account in the First Bank of Catoosa on February 1, 1991.

The Bar alleged that Hudson & Keyes received a check from Gasaway for this amount but that the check was twice returned for insufficient funds. This alleged check does not appear in the trial panel record. No witness from Hudson & Keyes testified. Willougby testified that he was not contacted by anyone regarding the debt after he delivered the cashier's check to Gasaway. We conclude that the evidence before us is not clear and convincing that Gasaway converted the $2,334.10, and that count is dismissed.

This evidence concluded the first day of the panel proceeding. After a discussion on the record concerning future witnesses for the same and additional Counts, the sufficiency of the evidence already presented, and the ruling which deemed the allegations admitted, the Bar rested its case.

### VI. CONCLUSION

In summary, the Respondent's resignation was properly denied. His motion for continuance because of the absence of one trial panel member was properly denied, as was his motion for a continuance on the basis of a related pending criminal proceeding. His motion to quash the subpoenas issued to examine his bank accounts was likewise properly denied. Association's motion to deem its allegations admitted was erroneously sustained, and we do not consider them so admitted.

 The evidence is clear and convincing, however, that the Respondent has received clients' money and used the money for purposes other than for those clients. When a lawyer receives a client's funds for a specific purpose, he or she must apply those funds to that purpose. Rule 1.4(b) of the Rules Governing Disciplinary Proceedings.[22]

The evidence shows acts of commingling. Client funds must be kept separate from the property of the lawyer. Rule 1.15(a) of the Rules of Professional Conduct.[23] ACI suffered a loss of $12,400 because the Respondent converted funds belonging to ACI. A lawyer may not convert the property of clients. Rule 1.4(c) of the Rules Governing Disciplinary Proceedings.[24] The Respondent deposited a check in the amount of $25,147.29 and wrote checks against that amount when he knew that another person had an interest in those funds. The funds were not preserved and kept separate until the dispute was resolved. This act violates Rule 1.15(c) of the Rules of Professional Conduct.[25]

---

**22.** The version of Rule 1.4(b) applicable to this proceeding states in part:

Where money or other property has been entrusted to any attorney for a specific purpose, he must apply it to that purpose. He may avail himself of a counterclaim or setoff for fees against any money or other property of his client coming into his hands for such specific purpose, and a refusal to account for and deliver over such money or property upon demand shall be deemed a conversion.

**23.** Rule 1.15(a) states in part:

A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property.

**24.** Rule 1.4(c) applicable herein states:

Theft by conversion or otherwise of the funds of a client shall, if proved, result in disbarment.

**25.** Rule 1.15(c) states:

When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved.

This Court suspended the Respondent for one year for commingling funds and for failing to properly respond to a Bar grievance. *State ex rel. Oklahoma Bar Association v. Gasaway,* 810 P.2d 826 (Okla. 1991). The Bar included this prior proceeding as an allegation to enhance discipline. The Bar also included a prior private reprimand from the Professional Responsibility Commission to enhance discipline.

 A lawyer's act amounting to conversion of a client's funds warrants disbarment. *State ex rel. Oklahoma Bar Association v. Moss,* 794 P.2d 403, 411 n. 8 (Okla.1990); 5 O.S.1991 Ch. 1, App. 1–A, Rule 1.4(c). The multiple acts of commingling show a pattern and practice of this prohibited activity. As in *State ex rel. Oklahoma Bar Association v. Perkins,* 757 P.2d 825, 832 (Okla.1988), we have searched the record for mitigating evidence and find none. The Bar Association filed an application to assess costs against the Respondent in the amount of $3,212.65. The application to assess costs is not opposed, and upon our review we find that the application should be granted. Rule 6.16, Rules Governing Disciplinary Proceedings.

WE ORDER THAT Don E. Gasaway be disbarred and his name stricken from the roll of attorneys effective July 13, 1992, the date he was first suspended. WE ORDER THAT the costs of $3,212.65 shall be paid within 90 days of this date this opinion becomes effective.

LAVENDER, V.C.J., and HARGRAVE, ALMA WILSON and WATT, JJ., concur.

HODGES, C.J., and KAUGER, J., concur in result.

SIMMS, J., disqualified.

OPALA, Justice, concurring in disbarment *only*.

While I do not accede to the court's pronouncement, I concur in today's sentence of disbarment.

One who is authorized to practice law bears a *government license* to serve the public as a legal practitioner. That public-

law interest, once conferred, may not be *unilaterally* extinguished or abandoned by its holder's act of relinquishing his/her status at the Bar.